DeQuan FRY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–0008–CR–471.

Supreme Court of Indiana.

June 7, 2001.

Michael E. Caudill, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

DeQuan Fry was convicted of murder, conspiracy to commit robbery, robbery, and assisting a criminal. He was sentenced to sixty-eight years imprisonment. In this direct appeal, he contends that: (1) the trial court abused its discretion in admitting evidence of a scheme to steal a big-screen television; (2) the trial court abused its discretion in refusing a jury instruction on "mere presence"; and (3) there was insufficient evidence to convict Fry of felony murder and conspiracy to commit robbery. We affirm the judgment of the trial court.

### Factual and Procedural Background

Sometime in the fall of 1997, Douglas Higgins saw Timothy Taylor and William Jones on West 27th Street in Indianapolis. Shortly after Taylor and Jones entered a building, Fry, his brother DaTwone, and Anthony "Banks" Johnson arrived in a car. Fry told Higgins that Taylor "beat him out of something" and he was "going to pop him." Taylor and Jones then appeared and Fry, DaTwone, and Johnson forced the two into the car at gunpoint. According to Higgins, all three were armed. On October 10, 1997, the Indianapolis police found Taylor's body in an alley and Jones' in a nearby yard. Both had died from gunshot wounds.

Police questioned Fry on October 20, 1997. Fry admitted that he and Taylor were involved in a scheme to steal a big-screen television. Taylor was to arrange to have a television delivered from a rent-to-own establishment to Fry's girlfriend's house where Fry lived. Taylor would pick the set up, and give Fry $300. On the day of the murders, a television was delivered to Fry's girlfriend's house, and friends of Taylor picked it up, but Fry did not received his money. According to Fry, DaTwone, Johnson, and Taylor were also involved in a separate scheme of their own.

Fry said that later that night, DaTwone, Johnson, and Fry ran into Jones and Taylor on the street and DaTwone threatened Taylor. Fry then asked Jones and Taylor to come with them, which they did voluntarily. As the group drove, DaTwone began arguing with Taylor over money he claimed was owed to him. DaTwone and Johnson then threatened to kill Jones and Taylor. Johnson searched both Jones and Taylor and recovered a large brick of marijuana and more than $100 in cash from Taylor.

In Fry's account, the group drove to an alley, where he, DaTwone, and Johnson took Taylor's shoes, and ordered Taylor and Jones out of the car. As Taylor exited the car, he and DaTwone began to struggle and DaTwone shot Taylor, then chased him when he attempted to flee, and shot him several more times. When Taylor fell, DaTwone fired another shot to his head. DaTwone then returned to the car and shot Jones. After Jones fell in a nearby yard, DaTwone also shot him in the head. Fry, DaTwone, and Johnson then drove away. According to Fry, DaTwone was the only one in the encounter who had a gun.

After the murders, Fry directed his brother to stop near the Indianapolis Water Company Central Canal and Fry threw Taylor's shoes into the Canal. He later threw DaTwone's gun into the Canal as well. The next day, Fry received part of the money from the sale of the marijuana taken from Taylor. On October 11, 1997,

police recovered a pair of shoes from the Canal with Taylor's ID in them.

Fry was charged with two counts of felony murder, conspiracy to commit robbery, robbery, two counts of criminal confinement, and assisting a criminal. He was found guilty of the felony murder of Jones, conspiracy to commit robbery, robbery, and assisting a criminal. The trial court merged the robbery and conspiracy to commit robbery convictions and sentenced Fry to sixty years for murder and thirty years for conspiracy to commit robbery, to run concurrently, and eight years for assisting a criminal, to be served consecutively with the other sentences.

## I. Evidence of the Television Scheme

Fry contends that the trial court abused its discretion in admitting evidence of the plan to steal a television set. The State responds that this evidence was not used to make the "forbidden inference" that the defendant had a criminal propensity and therefore engaged in the charged conduct, but was used to show motive and the relationship between Fry and the victims.

■ Indiana Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." In assessing admissibility of 404(b) evidence the court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of

the evidence against its prejudicial effect pursuant to Rule 403. *Hicks v. State*, 690 N.E.2d 215, 221 (Ind.1997). The relevance and balancing issues are reviewed for an abuse of discretion. *Thompson v. State*, 690 N.E.2d 224, 233 (Ind.1997). Evidence of motive is always relevant in the proof of a crime, and a defendant's prior actions with respect to the victim are also usually admissible to show the relationship between the two. *Ross v. State*, 676 N.E.2d 339, 346 (Ind.1996).

■ Here, the State offered the evidence of the television scheme to show the defendant's motive for killing Taylor and Jones. Although Fry contended at trial, as he does on appeal, that this evidence was admitted to show his bad character and his propensity to act in conformity with the prior bad acts, the trial court specifically found that the testimony went to motive.[1] This satisfied Rule 404(b). Although the trial court did not make a specific finding on the balance of prejudice and probative value, it did not abuse its discretion under Rule 403. The probative value of the evidence of the television scheme was high. It established a reason for Fry's hostility to Taylor and Fry's motive to rob Taylor. The danger of unfair prejudice was fairly low because this scheme was minor and non-violent in nature, as opposed to the charged crimes. We conclude that the probative value was not substantially outweighed by any potential prejudice that might arise from this evidence. *See Ortiz v. State*, 716 N.E.2d 345, 350 (Ind.1999).

## II. Jury Instruction

Fry also contends that the trial court abused its discretion in not instructing on

---

1. The trial court stated, "I'm going to deny your motion. I think that [the evidence] is appropriate. I think it does help the State explain why there may have been some motive for this event as alleged to have taken place. I think it gives some explanation and it is, I think, part of the fabric of the crime so, over your objection, I'm going to allow the State to inquire but please preserve the record by objecting at the appropriate time."

"mere presence." At trial, the trial court sua sponte added an instruction on aiding and abetting and then denied Fry's request to instruct on "mere presence."

> Mr. Jinks [defense counsel]: Your Honor, I'd ask that the Court tender a [sic] instruction on mere presence. The Court standard instruction we've given as recently as the State v. Thai Luong. I think we had an agreement on what that was and I'd use the Court's standard instruction on that.

> The Court: Well, I'm not sure that there is a good basis for the Court to give that instruction. The statement that your client is alleged to have given to the detective does cause me concern about giving mere presence. I don't think that he was merely present. It appears that he—if the jurors believe his alleged statement, he was involved in disposing—at the very minimum, disposing of evidence. He wasn't merely present.

> . . . .

> The Court: Well but see, I don't have an instruction in front of me.

> . . . .

> The Court: I don't have anything in front of me. I don't find anything in the pattern jury instructions on mere presence to give any guidance, therefore, I'm going to decline the invitation.

■ This Court has recently held that a defendant is ordinarily not required to tender proposed alternative instructions to preserve a claim of error. *Scisney v. State,* 701 N.E.2d 847, 848 (Ind.1998). Specifically, this Court concluded that, although a defendant is not generally required to tender an alternative instruction

when objecting to a proposed instruction, the "instruction objection at trial [must be] sufficiently clear and specific to inform the trial court of the claimed error and to prevent inadvertent error." *Id.* However, if the claimed error is failure to give an instruction, "a tendered instruction is necessary to preserve error because, without the substance of an instruction upon which to rule, the trial court has not been given a reasonable opportunity to consider and implement the request." *Id.* at 848 n. 3. Because Fry did not tender a proposed instruction on "mere presence," he has waived any claim of error by failing to give an instruction on that subject.

### III. Sufficiency of the Evidence

■ Finally, Fry claims that there was insufficient evidence to support his convictions for conspiracy to commit robbery [2] and felony murder. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Spurlock v. State,* 675 N.E.2d 312, 314 (Ind.1996). We look to the evidence and the reasonable inferences therefrom that support the verdict and will affirm a conviction if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.* Mere presence at the crime scene with the opportunity to commit a crime is not a sufficient basis on which to support a conviction. *Roop v. State,* 730 N.E.2d 1267, 1271 (Ind.2000); *Wilson v. State,* 455 N.E.2d 1120, 1122 (Ind.1983). However, presence at the scene in connection with other circumstances tending to show participation may be sufficient to sustain a conviction. *Roop,* 730 N.E.2d at 1271.

---

**2.** Because the trial court merged the robbery conviction into the conspiracy to commit robbery conviction, here we do not separately address the sufficiency of the evidence with regard to the robbery conviction. *See Cutter v. State,* 725 N.E.2d 401, 407 n. 2 (Ind.2000).

To prove felony murder, the State must establish that: (1) Fry killed another human being (2) while committing or attempting to commit robbery. Ind. Code § 35–42–1–1(2) (1998). The jury was instructed on aiding and abetting and, therefore, could have found Fry responsible for the actions of his accomplices. Higgins testified that Fry had a gun and forced Taylor and Jones into a car. The evidence at trial showed that cash and marijuana were taken from Taylor and Jones while in the car and that Fry received money from the sale of the marijuana. Fry had a motive for robbery because Taylor had never paid Fry for his participation in the television scheme. Indeed, Fry had threatened to "pop" Taylor. According to Fry's own testimony, he directed the disposal of Taylor's shoes and the murder weapon after the killings. This evidence establishes that at a minimum Fry was an accomplice to the robbery of Taylor and thus was also guilty in the felony murder of Jones. This was sufficient evidence to convict Fry of the felony murder of Jones.

To convict Fry of conspiracy to rob Taylor, the State must prove that: (1) with the intent to commit robbery, (2) Fry agreed with another person to commit robbery and (3) an overt act in furtherance of the agreement was performed. *Id.* § 35–41–5–2 (1998). In proving the agreement element, the State is not required to show an express formal agreement, and proof of the conspiracy may rest entirely on circumstantial evidence. *Bailey v. State,* 717 N.E.2d 1, 3 (Ind.1999). The evidence established that Fry threatened to "pop" Taylor because Taylor "beat him out of something." Fry and two accomplices forced Taylor and Jones into DaTwone's car. Fry was present when marijuana and money were taken from the two, and Fry received part of the money from the sale of the marijuana. Although there was no direct evidence of an agreement among Fry, DaTwone, and Johnson, all three participated in taking and robbing Taylor. In the aggregate this is sufficient to establish motive, a concerted action by the group, and implementation of an agreement to rob Taylor. This is sufficient evidence to convict Fry of conspiracy to commit robbery.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.