**Ralph HERRON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 75A04–0306–CR–289.

Court of Appeals of Indiana.

May 17, 2004.

David A. Brooks, Lyons, Sullivan & Brooks, Valparaiso, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Ralph Herron was convicted after a jury trial of aiding, inducing, or causing voluntary manslaughter, a Class A felony.[1] He raises two issues on appeal, which we restate as:

1. Whether testimony by the principal that Herron, who has no legs or hands and

---

1. Ind.Code § 35–41–2–4 (aiding, inducing, or causing an offense); Ind.Code § 35–42–1–3 (voluntary manslaughter).

only one arm, participated in the killing was sufficient evidence to support his conviction; and

2. Whether Herron's sentence was inappropriate.[2]

We affirm.[3]

## FACTS

The facts most favorable to the judgment are that Herron and Ronald Trent lived together in Medaryville. Herron has no legs, no right arm, and half a palm and no fingers on his left hand. He sometimes wore on his right arm a prosthetic limb with a hook on the end. There was testimony Herron could fish, drive, do car repairs, cook, and clean up after himself.

On November 29, 2002, Herron and Trent were drinking and they visited the home of Cecil Lovely. Cecil's brother Clyde left with Herron and Trent, and after purchasing more liquor the three returned to Herron and Trent's house where they continued drinking at the kitchen table. Lovely began talking about religion and asserted he was the "chosen one" because of where he was from. (Tr. at 390.) Eventually an argument ensued and Lovely attacked Herron. Trent separated the two and Herron went to another room. Lovely continued to discuss religion and the argument resumed.

Herron returned to the kitchen wearing his hook. Lovely again hit Herron, and Trent struck Lovely. Trent kicked Lovely and beat him with a cane as Herron yelled "Hit him again." (Tr. at 393.) Herron hit Lovely with his hook, then he gave Trent some plastic to wrap around Lovely and some cable to tie around the plastic. Trent wrapped Lovely in the plastic and dragged him to a car. Herron helped Trent put Lovely in the trunk, then Trent cleaned up the blood in the kitchen. Herron told Trent to use bleach because it covers DNA.

Herron and Trent drove to the Bogus Ditch Bridge, where Herron told Trent to stop. Trent removed Lovely from the trunk and pushed him over the side of the bridge. Trent left his own clothing at another location and the two returned home. When Lovely did not return home, his mother called Herron. Herron told her he and Trent had dropped Lovely off at an apartment.

Lovely's body was later found submerged in the ditch. Some of his wounds were consistent with being inflicted by a screwdriver or Herron's hook.

## DISCUSSION AND DECISION

### 1. *Sufficiency of Evidence*

■ A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense. Ind.Code § 35–41–2–4. In determining whether a person aided another in the commission of a crime, we consider: (1) presence at the scene of the crime; (2) companionship with

2. Herron argues in part his sentence was inappropriate because it was five years longer than the sentence imposed on the person principally involved in the killing. The State moved to strike materials in Herron's Appendix related to the sentence imposed on Ronald Trent, the other participant in the crime, on the ground that information was not included in the trial record and is therefore not a proper subject for review. As explained in more detail below, we grant the State's motion to strike.

3. We heard oral argument on April 14, 2004 at Goshen High School. We thank the school for its hospitality and we commend counsel for the quality of their oral advocacy.

another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime. *Garland v. State,* 788 N.E.2d 425, 431 (Ind.2003).

■ In reviewing sufficiency of the evidence, we will affirm a conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, and without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Rogers v. State,* 741 N.E.2d 395, 396 (Ind. Ct.App.2000), *reh'g denied, trans. denied* 753 N.E.2d 16 (Ind.2001). When a conviction is based on circumstantial evidence, we will not disturb the verdict if the factfinder could reasonably infer from the evidence presented that the defendant is guilty beyond a reasonable doubt. *Id.* We need not find the circumstantial evidence overcomes every reasonable hypothesis of innocence; rather, there must merely be a reasonable inference from the evidence supporting the verdict for us to find the evidence sufficient. *Id.*

■ Herron asserts the "incredible dubiosity" rule should apply in his case because his convictions were based on Trent's testimony, which he characterizes as "inherently improbable" and "inherently contradictory." (Appellant's Br. at 6.) Under the "incredible dubiosity" rule, a court will impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted inherently improb-

able testimony or coerced, equivocal, wholly uncorroborated testimony of "incredible dubiosity." *Stephenson v. State,* 742 N.E.2d 463, 497 (Ind.2001), *cert. denied* 534 U.S. 1105, 122 S.Ct. 905, 151 L.Ed.2d 874 (2002). When a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Id.* at 497–98. Application of this rule is rare; the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id.* at 498.

■ The testimony of an accomplice is subject to high scrutiny. However, such testimony is by itself sufficient to sustain a conviction. *Id. at* 496. The fact that the accomplice may not be completely trustworthy goes to the weight and credibility of his testimony, something that is completely within the province of the jury and cannot be reviewed on appeal. *Id.* at 497.

Herron characterizes as "incredibly dubious" (Appellant's Br. at 6) Trent's testimony that someone in Herron's physical condition could have helped Trent kill Lovely and load him into the trunk of a car and that Trent needed Herron's help to beat Lovely to death. Herron characterizes as "inherently contradictory,"[4] *id.,* testimony by Trent that he did not use a hammer or screwdriver, when there was evidence that it appeared Lovely was beaten with a hammer and stabbed with a

---

4. Herron also directs us to the following evidence and testimony as "inherently contradictory" (Appellant's Br. at 6): 1) none of the victim's blood was found on Herron's clothing: "Trent explains that he disposed of Ralph Herron's blood stained clothes. Although his own blood stained clothes were found on a ditch bank in another county where he claims Ralph Herron told him to put them." (*Id.* at 7.); 2) Trent testified he

needed Herron's help to put Lovely's body in the trunk of the car, but ordinarily Herron rode as a passenger when Trent drove, and Trent ordinarily helped Herron into the car from his wheelchair and put the wheelchair in the trunk.

The "contradictions" in the above testimony are not apparent, and Herron does not explain in his brief why that testimony and evidence is "inherently contradictory."

screwdriver. Herron also notes Trent's testimony that Herron had used his hook to strike Lovely. Only Herron's blood was found on the prosthesis, and not Lovely's. Trent testified he cleaned the prosthesis with bleach "apparently cleaning Clyde Lovely's blood off the prosthetic arm, but miraculously leaving Ralph Herron's blood on the prosthetic arm." (Appellant's Reply Br. at 2.)

The "incredible dubiosity" rule does not apply because Trent's testimony was not inherently contradictory and because there was circumstantial evidence of Herron's guilt. While Trent's testimony was inconsistent with medical evidence and Herron's testimony that Lovely was hit with a hammer and stabbed with a screwdriver, those inconsistencies do not render Trent's testimony "inherently contradictory."

Nor was Trent's testimony so improbable no reasonable person could believe it. Herron was present at his trial and the jurors were able to view his physical limitations. There was evidence Herron could, despite his disabilities, change a car battery by himself and put the used battery in the trunk, and that he could leave a car and get into his wheelchair without help. Therefore, we cannot characterize as "improbable" Trent's testimony that Herron beat Lovely with his hook and helped put Lovely in the trunk.

There was evidence in the record that Herron encouraged Trent to beat Lovely, delivered some blows himself, and directed the attempts to cover up the killing. This,

without more, is sufficient to show Herron aided in and induced the killing. In *Gibbs v. State*, 426 N.E.2d 1150 (Ind.Ct.App. 1981), the victim and Gibbs were engaged in a fight. Gibbs' sister saw the fight and became distraught. She obtained a knife from the kitchen and stabbed the victim to death. On appeal, Gibbs argued he was engaged in only a fistfight, which was not lethal behavior. Therefore, his sister bore sole responsibility for the victim's death. We determined a jury could reasonably infer that in the course of the fight, Gibbs solicited the help of his family in defeating the victim. That would constitute inducing or causing others to commit battery on the victim, and Gibbs' continued fighting with the victim would be an aid to that battery. *Id.* at 1155.

We cannot characterize as "incredibly dubious" the evidence of Herron's involvement in the killing, nor can we say the evidence was insufficient to support his conviction.

## 2. *Herron's Sentencing*

■ Herron asserts his sentence was inappropriate because he received a longer sentence than did Trent despite his lesser involvement in the killing.[5] In support of that argument he included in his appendix a copy of Trent's guilty plea agreement and sentencing order. The State moved to strike those documents from Herron's appendix because they were not a part of record on appeal.[6] We agree.

---

5. A sentence that is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *Kien v. State*, 782 N.E.2d 398, 416 (Ind.Ct.App.2003), *reh'g denied, trans. denied.* Herron does not offer on appeal an independent argument that his sentence was inappropriate based on his character or the nature of his offense.

6. We note initially that Trent apparently did not enter into the plea agreement nor was he sentenced until after the trial court proceedings had ended in Herron's case. Therefore, that information could not have been part of Herron's trial record.

Our supreme court noted in *Harris v. State*, 427 N.E.2d 658, 662 (Ind.1981) that in addition to the record available to the trial judge, Ind. Trial Rule 59 and Ind.Crim. Rule 17 both

As a general rule, matters not contained in the record are not proper subjects for review. *See, e.g., Turner v. State,* 508 N.E.2d 541, 543 (Ind.1987), *reh'g denied.* Turner had been charged as an adult. He later pointed out to the court that he was less than sixteen years of age when the crime was committed and moved to dismiss the cause as the Superior Court lacked jurisdiction. The Superior Court dismissed the action and the State brought a delinquency proceeding in juvenile court, which waived jurisdiction. Turner was then convicted in Superior Court and he appealed. .

The appendix Turner filed with his Appellant's Brief contained filings and docket sheets from the Superior Court in the action that was dismissed, as well as the actions taken in the Juvenile Court. Our supreme court noted none of those documents and transcripts had been certified by any court, nor was there any showing they were part of the record of the cause

being appealed. The materials therefore were not proper materials to consider on appeal. *Id.* The court noted "An appellant must see that the record of proceedings contains all pleadings, papers, and transcripts of testimony which disclose and have any bearing on the error he is alleging. *Any error alleged but not disclosed by the record, or any matter not contained in the record,* will not be a proper subject for review." *Id.* (Emphasis supplied.)

Trent's guilty plea and sentencing proceedings were not part of the trial record. Accordingly, they are not a proper subject for our review and we grant the State's motion to strike. Because Trent's sentence is not properly before us, we cannot say Herron's sentence is inappropriate on the ground it is longer than Trent's.

Even if we were to consider Trent's sentence, we could not find Herron's sentence inappropriate because it is longer than Trent's.[7] The common law of

---

permitted the filing of affidavits with a Motion to Correct Error when error is to be based on matters otherwise outside the record:

> A properly verified affidavit thus becomes part of the record under these rules. If the affidavit is uncontradicted, the appellate court must accept its contents as true. Thus there is a mechanism available to a defendant to bring facts dehors the record before the trial court and the Court of Appeals.

(Citations omitted.) The record does not reflect Herron sought to bring before this court by means of an affidavit the evidence the State challenges.

7. While we grant the State's motion to strike, we express our concern about the quandary that can result for an appellant from the application of this rule. Trent's guilty plea and sentencing materials could not have been a part of the record of proceedings in Herron's case because of the sequence of the convictions and sentencing proceedings. The State cites Ind. Appellate Rule 50(B), which lists the documents an appellant's appendix "shall" contain, if they exist, and notes Herron's materials are not included on that list.

Herron asserts the list of documents in the rule is not a limit on what can be included in an appendix. He also notes language in App. R. 50(B)(2), which addresses the contents of an appellee's appendix and which states "The Appendix may contain additional items that are relevant to either issues raised on appeal or on cross-appeal."

> It is apparently the position of the Attorney General's office that as appellees they can put anything they want into their appendix so long as it is relevant, but that appealing defendants can *only* use the record materials set forth in [App. R. 50(B)(1)] ... if that interpretation of the rules were correct, it would create a double standard that is fundamentally unfair to appealing criminal defendants.

(Appellant's Reply Br. at 4) (emphasis in original).

Because, as explained below, Herron's sentence would not be "inappropriate" if measured against Trent's, we express no opinion as to whether the language of App. R. 50(B)(2) allows appellees, but not appellants, to include in their appendices materials not included in the trial record.

criminal liability has been superseded by statute in Indiana, and the legal distinction between a principal and an accessory no longer exists. *Johnson v. State*, 687 N.E.2d 345, 349–50 (Ind.1997). Ind.Code § 35–41–2–4 states "[A] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" That language is interpreted to mean that an actor who would have been considered an accessory under the common law now vicariously commits the actual offense. *Id.*

■ Individuals convicted of felonies in Indiana are considered to have been convicted on the weight of their own actions even if the court or jury uses the accomplice liability statute to determine guilt. *Id.* The standard for reviewing the sentence imposed on an accomplice is thus the same as it is for principals:[8] whether the sentence is "inappropriate in light of the nature of the offense and character of the offender." *Id.* (addressing the "manifestly unreasonable" standard for review of sentences then in effect, now Ind. Appellate Rule 7(B)). The standard provides no categorical benefit to an actor by virtue of his having been charged as an accomplice.

Each actor is assessed on the facts available. *Id.*

In *Williams v. State*, 631 N.E.2d 485, 488 (Ind.1994), *reh'g denied*, Williams received consecutive sentences of 50 years for convictions of conspiracy to commit murder and aiding in a burglary, with 10 years suspended. He claimed his sentence was disproportionate, citing the four-year sentences given each of the other two participants in the crime upon their guilty pleas and their principal role in the violence that occurred. Our supreme court noted "when a defendant proceeds to trial and his accomplice pleads guilty, the sentences need not be identical and there is no requirement of consistency." *Id.* (citations and quotations omitted). In his sentencing statement, the trial judge noted this was a for-hire crime that Williams "orchestrated by planning and by driving and by setting [the victim] up and by disposing of the weapon." *Id.* Our supreme court did not find the sentence to be unconstitutionally disproportionate considering the nature and gravity of the offense.

Like Williams, Herron chose to proceed to trial. Trent, like Williams' accomplices,

---

8. *See Sanquenetti v. State*, 727 N.E.2d 437, 439 (Ind.2000). Sanquenetti challenged his conviction of murder on the ground the accomplice liability statute violated the Privileges and Immunities Clause of the Indiana Constitution as applied in his case. He argued the statute was unconstitutional because it allowed him to be convicted of murder for aiding in the killing even though his accomplice, who Sanquenetti contended actually killed the victim, was convicted of involuntary manslaughter in a separate trial. By allowing this result, the statute allowed the "accessory" to be convicted and punished for a greater offense than the "principal" and thus impermissibly granted the "principal" the privilege of being convicted of a lesser crime than the accessory.

Our supreme court rejected Sanquenetti's constitutional argument, and Herron makes no such argument in this appeal. The court noted the common law doctrine of "mandated consistency," which required that when a principal and an accessory are tried separately, the accessory cannot be convicted of a crime greater than that of which the principal is convicted. *Id.* at 440. However, it held the accomplice liability statute superseded the common law of criminal liability, abandoning the common law terms of principal and accessory, and also superseded the application of the common law doctrine of mandated consistency when defendants are convicted under this statute. *Id.* at 440–41. "Because under the accomplice liability statute, any accomplice to a crime may be tried and convicted upon sufficient proof, regardless of whether other accomplices were prosecuted, convicted, or acquitted, the doctrine of mandated consistency is inapplicable." *Id.* at 441.

had a principal role in the crime but decided to plead guilty. As in *Williams*, there is no requirement that Herron's and Trent's sentences be consistent or identical. We accordingly cannot say Herron's sentence was inappropriate on that ground.

## CONCLUSION

The evidence supporting Herron's conviction was not "incredibly dubious" and Herron did not show his sentence was inappropriate in light of his character and the nature of his offense. Accordingly, we affirm.

SHARPNACK and BARNES, JJ., concur.