**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 31 2012, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NICK KHANTHAMANY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1106-CR-497 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-1004-MR-32721

**January 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Nick Khanthamany, Randall Bowles, Alan More, and Mark Shepard were all charged in connection with a shooting and attempted robbery. Bowles pled guilty and agreed to testify against the others. Bowles was the only witness who had direct, personal knowledge of Khanthamany's involvement. After a jury trial, Khanthamany was convicted of felony murder and conspiracy to commit robbery. On appeal, Khanthamany argues that Bowles's testimony is incredibly dubious and that the evidence is therefore insufficient to support his convictions. Because there is circumstantial evidence that Khanthamany was present with the other perpetrators before, during, and after the shooting and attempted robbery and that he participated in an act in furtherance of the conspiracy, we cannot say that Bowles's testimony is incredibly dubious. Therefore, we affirm Khanthamany's convictions.

**Facts and Procedural History**

In March 2010, Bowles was living with his girlfriend Whitney Magers, his cousin Tiffany Baker, and his friend More. Bowles and More learned that John Tracey had a large amount of marijuana and cash in his Indianapolis apartment, and they started planning to rob Tracey. Bowles and More attempted to recruit Khanthamany and Shepard, who were initially reluctant to get involved.

On the evening of March 7, 2010, Shepard and his girlfriend Anna Barnard (who is also Bowles's cousin) went to the house where Bowles, Magers, Baker, and More lived. The men continued to discuss robbing Tracey. Then Bowles, More, Shepard, and Barnard went to Khanthamany's house. Bowles had a .25 caliber gun and a .40 caliber gun, but he did not

have ammunition for the .25 caliber gun. Bowles wanted Khanthamany to be involved in the robbery because he had ammunition for a .25 caliber gun and because his voice would not be recognized – Bowles and More had previously purchased marijuana from Tracey. Although Barnard and Khanthamany's wife Debora attempted to dissuade Shepard and Khanthamany from participating, Shepard and Khanthamany left with Bowles and More.

The men drove Shepard's white Buick LeSabre to Tracey's house. When they arrived, they determined that the house had a separate apartment upstairs where Tracey lived. While they were trying to figure out how to get inside, they realized that someone had arrived in a white Mitsubishi. They decided to deflate the tires, wait for the driver to come out, and then force that person to take them inside.

The owner of the Mitsubishi was Martin Jenkins, who was visiting Tracey and his roommate, Seth Habig. Habig left the house to take his girlfriend some food at work and saw four people slashing Jenkins's tires. He went back inside and told Jenkins and Tracey. Habig grabbed a hammer, and Jenkins and Tracey took knives, but when they got outside, they did not see anyone around. However, they found the white Buick, which they suspected belonged to the people who had damaged Jenkins's car. Habig broke some of the windows with a hammer, and Tracey slashed one of the tires.

Tracey spotted someone in a wooded area and said, "There's the M-F-er right there." Tr. at 37. Then shots rang out. Tracey stumbled, and then Tracey, Habig, and Jenkins started running back to the house. Additional shots were fired, and Tracey fell to the ground. He sustained five gunshot wounds, including one that severed his spinal cord and aorta. He was

3

taken to the hospital, but did not survive long.

Bowles, Khanthamany, and Shepard fled in the Buick; they did not know where More had gone. They needed to call someone to pick them up because they could not get far in the Buick due to the damage. At that point, Bowles realized that he had lost the cell phone that he had borrowed earlier from Baker.

Around 2:00 in the morning, Debora became worried and called Khanthamany's cell phone several times in quick succession. Khanthamany did not answer, so Barnard tried to call him as well. At some point, Shepard answered Khanthamany's cell phone and spoke to Barnard. Barnard, Baker, and Magers left and began driving around looking for the men. However, they found someone else to give them a ride to Khanthamany's house. Khanthamany, Bowles, and Shepard were there when the women returned.

Police found .25 caliber shell casings and .40 caliber shell casings at the scene. Four .25 caliber bullets were removed from Tracey's body, and bullet fragments were removed from the fatal wound. However, the guns were never recovered. Detective Jeffrey Wager found Baker's cell phone at the scene. When he spoke to Baker, she implicated Bowles, Khanthamany, Shepard, and More in the attempted robbery and shooting. The Buick was located, and Khanthamany's DNA was found on the rear passenger door and a Styrofoam cup taken from inside the car; however, there was evidence that Khanthamany had been in the car on multiple occasions.

Khanthamany was charged with attempted robbery, conspiracy to commit robbery, murder during the commission of a felony, and carrying a handgun without a license.

4

Bowles, Shepard, and More were also charged. Bowles pled guilty to class A felony attempted robbery in exchange for a cap of thirty-five years on the executed portion of his sentence and dismissal of the other charges, and he also agreed to testify against the other defendants.

Khanthamany was tried by jury on May 9 through May 11, 2011. Bowles testified that although Khanthamany was initially reluctant to participate, he eventually agreed to take part in the robbery. Bowles stated that he gave the .25 caliber gun to More and the .40 caliber gun to Shepard. Bowles claimed that he gave both guns away because he decided that he wanted to try to take a bigger portion of the loot for himself. At some point, More gave the .25 caliber gun to Khanthamany and disappeared; Bowles opined that More was "scared to pull the trigger." *Id*. at 170. Bowles claimed that Shepard started the shooting, then Khanthamany shot Tracey, and after Tracey started running, Shepard shot him and he fell down.

Baker testified that she heard Bowles, Shepard, and More talking about their plans prior to the robbery and was aware that they intended to involve Khanthamany. She knew that Bowles had two guns, but did not have ammunition for one of them. She confirmed that Bowles had taken her cell phone with him.

Barnard also heard the conversations prior to the robbery, and she testified that Shepard was reluctant to get involved and that Khanthamany was not even paying attention. She stated that More had the .25 caliber gun and Bowles had the .40 caliber gun, but later gave it to Shepard.

Debora confirmed that Bowles, Shepard, and More came to her house and were talking about robbing someone who had drugs and money. She testified that Khanthamany was just sitting and listening and that she did not remember him agreeing to go with the others; however, she was aware that he left the house at the same time as the other men.

Cell phone records confirmed that Barnard and Debora called Khanthamany several times around 2:00 a.m. the night of the robbery. Barnard and Baker testified that they went out looking for the men, but did not find them. When they returned to Debora's house, Khanthamany, Bowles, and Shepard were there.

The jury found Khanthamany guilty of attempted robbery, conspiracy to commit robbery, and felony murder, and not guilty of carrying a handgun without a license. The court entered a judgment of conviction of conspiracy to commit robbery as a class C felony and felony murder.[1] Khanthamany now appeals.

## Discussion and Decision

Khanthamany argues that the evidence is insufficient to support his convictions. Our standard of review is well settled:

> When reviewing a sufficiency of the evidence claim, we consider only the evidence most favorable to the [verdict] and all reasonable inferences to be

---

[1] The attempted robbery was charged as a class A felony due to the serious bodily injury to Tracey. *See* Ind. Code § 35-42-5-1 (robbery is a class C felony, but is a class B felony if committed while armed with a deadly weapon, and is a class A felony if it results in serious bodily injury to someone other than the defendant); Ind. Code § 35-41-5-1 (an attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted). The conspiracy was charged as a class B felony because the defendants conspired to commit armed robbery. *See* Ind. Code § 35-41-5-2 (a conspiracy to commit a felony is a felony of the same class as the underlying felony). The State did not attempt to prove intent to kill, but alleged only that the killing occurred during the commission of an attempted robbery. *See* Ind. Code § 35-42-1-1(2) (felony murder is committed if the killing occurs while the offender is committing or attempting to commit certain enumerated felonies, including robbery). The trial court ruled that the attempted robbery should merge and that judgment should be entered on the conspiracy conviction as a class C felony to avoid double jeopardy.

drawn from that evidence. We neither reweigh the evidence nor judge the credibility of the witnesses. We will affirm a conviction upon finding substantial evidence of probative value from which the jury could find the defendant guilty beyond a reasonable doubt.

*Green v. State*, 756 N.E.2d 496, 497 (Ind. 2001) (citations omitted). The testimony of a single eyewitness to a crime is sufficient to sustain a conviction. *Id.*

To obtain a conviction of conspiracy to commit robbery, the State had to prove that: (1) with the intent to commit robbery, (2) Khanthamany agreed with another person to commit robbery, and (3) an overt act in furtherance of the agreement was performed by one of the conspirators. *Fry v. State*, 748 N.E.2d 369, 374 (Ind. 2001); Ind. Code § 35-41-5-2. To obtain a conviction of felony murder, the State had to prove that: (1) Khanthamany killed another human being (2) while committing or attempting to commit robbery. *Fry*, 748 N.E.2d at 374; Ind. Code § 35-42-1-1(2). The State does not need to prove intent to kill, only the intent to commit the underlying felony. *Exum v. State*, 812 N.E.2d 204, 207 (Ind. Ct. App. 2004), *trans. denied*. Khanthamany may be found guilty of these crimes whether he acted as an accomplice or a principal. *See Vandivier v. State*, 822 N.E.2d 1047, 1054 (Ind. 2005) ("The individual who aids another person in committing a crime is as guilty as the actual perpetrator.").

Khanthamany argues that, apart from Bowles's testimony, there is no evidence that he participated or agreed to participate in the robbery. Implicitly acknowledging that Bowles's testimony is sufficient to sustain his convictions, Khanthamany contends that Bowles's testimony is incredibly dubious. "For testimony to be so inherently incredible that it is disregarded based on a finding of 'incredible dubiosity,' the witness must present testimony

7

that is inherently contradictory, wholly equivocal or the result of coercion, and there must also be a complete lack of circumstantial evidence of the defendant's guilt." *Clay v. State*, 755 N.E.2d 187, 189 (Ind. 2001). We note that

> [a]pplication of this rule is rare; the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.
> The testimony of an accomplice is subject to high scrutiny. However, such testimony is by itself sufficient to sustain a conviction. The fact that the accomplice may not be completely trustworthy goes to the weight and credibility of his testimony, something that is completely within the province of the jury and cannot be reviewed on appeal.

*Herron v. State*, 808 N.E.2d 172, 176 (Ind. Ct. App. 2004) (citations omitted), *trans. denied.*

This is not one of those rare cases in which the incredible dubiosity rule applies. Despite Khanthamany's criticism of Bowles's testimony, there was circumstantial evidence to support it. Debora and Barnard testified that Khanthamany was present while Bowles, More, and Shepard planned the robbery and that he left his house at the same time as the other men. After they left, Debora and Barnard tried to call Khanthamany, and Shepard eventually answered Khanthamany's phone, which would support an inference that Khanthamany and Shepard were together at the time. Habig testified that he saw four people slashing Jenkins's tires, which Bowles testified was part of their plan to gain access to the house. Bowles testified that he, Shepard, and Khanthamany left the scene together and returned to Khanthamany's house. Baker and Barnard testified that Bowles, Shepard, and Khanthamany were at Khanthamany's house when the women returned from looking for them. The circumstantial evidence that Khanthamany was present with the other perpetrators before, during, and after the attempted robbery and that Khanthamany participated by

8

slashing Jenkins's tires supports Bowles's testimony implicating Khanthamany in the attempted robbery and shooting. Therefore, we affirm his convictions.

Affirmed.

MAY, J., and BROWN, J., concur.