## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Johnson, IV,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 30, 2018

Court of Appeals Case No.
45A05-1710-CR-2434

Appeal from the Lake Superior Court

The Honorable Diane Ross Boswell, Judge

Trial Court Cause Nos.
45G03-1610-MR-6
45G03-1509-MR-8

**Baker, Judge.**

[1] David Johnson, IV ("Defendant"), appeals his convictions for Murder,[1] two counts of Felony Murder,[2] and Class A Misdemeanor Resisting Law Enforcement.[3] Defendant argues that the trial court erred by granting the State's motion to join two causes and by denying Defendant's subsequent motion to sever the causes. Finding no error, we affirm.

## Facts

[2] Defendant is married to Jeri Woods, and he has several children, including David Johnson, V ("Dooney"), and Aarion Greenwood ("Arey"). Defendant's father is David Johnson, III ("Johnson III"). Arey was good friends with eighteen-year-old Aareon Lackey ("Aareon"), who had a sixteen-year-old brother named Antonio Lackey ("Antonio").

[3] Approximately ten years ago, Defendant was shot in the face, resulting in the loss of his left eye. He believed that Alfred Wiley was the person who had shot him. On April 28, 2015, Defendant and Dooney left their home armed with Defendant's .38 Special revolver and another gun. Defendant instructed Dooney to park by an abandoned house, stating that he was looking for the man who had shot him ten years before. Wiley rode toward them on a bicycle and Defendant got out of the car and shot Wiley in the face with his .38

---

[1] Ind. Code § 35-42-1-1.

[2] *Id.*

[3] Ind. Code § 35-44.1-3-1.

Special. Wiley died as a result of this gunshot wound. Defendant and Dooney then drove to a nearby apartment complex where Damon Hill, a friend of Defendant's family, lived.

[4] Later that spring, Arey and Aareon took Defendant's guns and shot Hill with the .38 Special. They did not return the guns to Defendant, ultimately selling the .38 Special for money, marijuana, and another gun. Defendant was very angry with Arey and Aareon because they had stolen his guns and shot Hill, both of which he viewed as a betrayal.

[5] On June 26, 2015, Arey was released from the Juvenile Detention Center.[4] That morning, Defendant told Dooney and Kiontay Cason, a friend, that they were going to go get the guns. Johnson III, Defendant, Woods, Cason, and Dooney drove to the Juvenile Detention Center to pick up Arey. After Arey was released, Defendant pushed him into the van and began punching him because he had taken Defendant's guns.

[6] Throughout the course of the day, the group found Aareon and Antonio and forced them to get into the van. They attempted to track down the .38 Special but were unsuccessful. Ultimately, the entire group drove to "the farm," which was an isolated piece of land owned by Johnson III's sister. At the farm, Woods executed Aareon and Antonio. On July 17, 2015, family friends of the farm's owner were having an outing on that property when they discovered the

---

[4] He had been detained on allegations of domestic violence.

skeletal remains of Aareon and Antonio.  Law enforcement was eventually able to connect Defendant to these murders.

[7]     In September 2015, the State charged Defendant with two counts of murder, two counts of felony murder, two counts of kidnapping, and one count of resisting law enforcement in connection with the deaths of Aareon and Antonio under Cause Number 45G03-1509-MR-8 ("MR-8").[5]  In October 2016, the State charged Defendant with one count of murder for the Wiley killing under Cause Number 45G03-1610-MR-6 ("MR-6").

[8]     On November 3, 2016, the State filed a motion for joinder of MR-8 and MR-6.  Defendant objected; following a hearing, the trial court granted the motion.  On July 27, 2017, Defendant filed a motion for severance, which the trial court denied on July 31, 2017.

[9]     A jury trial was held from August 7-16, 2017.  The jury found Defendant guilty as charged in both MR-8 and MR-6.  The trial court merged multiple convictions because of double jeopardy concerns.  On September 19, 2017, the trial court imposed a 65-year sentence on the murder conviction in MR-6.  In MR-8, the trial court imposed 65-year sentences on each of the two felony murder convictions and a one-year sentence on the resisting law enforcement conviction.  The trial court ran the murder and felony murder sentences

---

[5] Woods, Cason, Johnson III, Arey, Dooney, and Arey's girlfriend were all charged as co-defendants in MR-8.  The appeals of Woods and Arey's girlfriend are currently pending before this Court.

consecutively and the resisting conviction concurrently, resulting in an aggregate sentence of 195 years incarceration. Defendant now appeals.

# Discussion and Decision

The sole issue raised by Defendant on appeal is whether MR-8 and MR-6 should have been joined. He contends that the trial court erred by granting the State's motion to join the causes and by later denying his motion to sever.

# I. Joinder

Defendant first argues that the trial court erred by granting the State's motion to join the two causes. Indiana Code section 35-34-1-9(a) provides that offenses may be joined for trial when they are:

>     (1)    of the same or similar character, even if not part of a single scheme or plan; or
>
>     (2)    based on the same conduct or a series of acts connected together or constituting parts of a single scheme or plan.

Here, the State argued that joinder was proper because the offenses in MR-8 and MR-6 were a series of acts connected together.

Our Supreme Court has held that when the commission of one crime provides the motive for the commission of a second crime, the two acts are connected together and joinder is appropriate. *See Smoote v. State*, 708 N.E.2d 1, 2-3 (Ind. 1999) (joinder of murder and drug dealing charges appropriate because State's theory of the case was that murder occurred because victim had not paid for

drugs supplied to him by defendant); *Barajas v. State*, 627 N.E.2d 437, 438 (Ind. 1994) (joinder of robbery and murder appropriate because State's theory of the case was that defendant used a car borrowed from the victim to commit a robbery and then killed the victim to ensure that the victim would not implicate him in the robbery).

[13] Here, the State's theory of the case was as follows:

- Defendant shot and killed Wiley with a .38 Special revolver.
- Arey and Aareon took that .38 Special (and another of Defendant's guns), shot Hill with it, and then sold it to someone else.
- Defendant was angry about the loss of his guns and was especially concerned about the .38 Special because it connected him to Wiley's murder, which at that point was still unsolved.

*See* Appellant's App. Vol. II p. 23-27 (arguing for joinder in part because finding the .38 Special used in the Wiley murder was a motive for the crimes against the Lackeys); Tr. Vol. 3 p. 40 (same in opening statement); Tr. Vol. 8 p. 9, 12, 14, 18 (same in closing statement). Given that the State's contention was that the commission of the second group of offenses was motivated in part by a desire to cover up the commission of the first offense, we find that the trial court did not err by joining MR-8 and MR-6.[6]

---

[6] Defendant argues that the evidence does not support the State's argument that covering up his connection to the Wiley murder motivated his part in the Lackey offenses. Reply Br. 5-6. What the evidence showed, however, is beside the point. The trial court ruled on the motion to join nearly a year before the trial, based solely on argument of counsel. And the State remained consistent before, during, and after the trial with respect to its theory of the case. Regardless of what the evidence did or did not show, therefore, we find that the trial court did not err by joining these causes.

# II. Severance

[14] Defendant also contends that, even if there was no error with respect to the motion to join the causes, the trial court should have granted his subsequent motion to sever them. In cases like this one, where joinder occurred under Indiana Code section 35-34-1-9(a)(2), a defendant's request for severance is left to the trial court's discretion. I.C. § 35-34-1-11(a); *Blanchard v. State*, 802 N.E.2d 14, 25 (Ind. Ct. App. 2004). Severance should be granted if it is necessary to "promote a fair determination of the defendant's guilt or innocence" considering the number of offenses charged, the complexity of the evidence, and the ability of the jury to distinguish the evidence and to apply the law intelligently to each offense. I.C. § 35-34-1-11(a). When severance is within the trial court's discretion, we will reverse only upon a showing of clear error. *Ben-Yisrayl v. State*, 690 N.E.2d 1141, 1146 (Ind. 1997).

[15] Here, Defendant argues that the number of offenses and the complexity of the evidence, including many witnesses with remarkably similar names, leads to a conclusion that the two cases should not have been tried together. Initially, we note that everything Defendant points to as creating complexity and the potential for confusion is contained solely within the MR-8 case, including the amount of evidence, the number of actors involved, their multiple nicknames, and the similarity of some of their names. Indeed, the Wiley case itself was comparatively simple, involving only Defendant and Dooney. Severing the two causes, therefore, would not have ameliorated the purported complexity in any significant way.

[16] Moreover, even if the two causes had been severed, evidence of the Wiley murder would likely have been admissible in the Lackey case. As noted above, the State's theory of the case was that covering up the Wiley murder provided a motive for Defendant's decision to find and repossess his .38 Special revolver, which was the motive for kidnapping the Lackey brothers. It is well established that evidence of motive is always relevant in the proof of a crime, *Fry v. State*, 748 N.E.2d 369, 372 (Ind. 2001), and that motive is one of the permissible purposes for which prior bad act evidence may be used without violating Indiana Evidence Rule 404(b), *Hicks v. State*, 690 N.E.2d 215, 218-19 (Ind. 1997). Severance, therefore, would not have prevented the jury from learning of all the alleged offenses.

[17] We also note that while the evidence was extensive, it was not particularly complex. The only forensic evidence was the ballistics evidence. The Wiley murder took place in a different month and in a different location than the events of the Lackey case, so there is no reason to be concerned that the jury would confuse the two sets of offenses. The trial court instructed the jury as to the elements necessary for conviction on each of the charges and noted that each charge must be considered individually and separately from the other counts. Under these circumstances, we find that the trial court did not commit clear error by denying Defendant's motion to sever the offenses.

[18] The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.