**Larry H. CLAY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–0010–CR–615.

Supreme Court of Indiana.

Sept. 26, 2001.

Eric K. Koselke, Indianapolis, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Larry H. Clay was convicted of murder and carrying a handgun without a license and was sentenced to sixty-five years imprisonment. In this direct appeal, Clay contends that there was insufficient evidence to support his convictions. We affirm the judgment of the trial court.

### Factual and Procedural Background

On June 24, 1999, Harold Bennett and Jerry Hoskins parked Bennett's car at the home of an acquaintance at 3707 North Leland in Indianapolis, and began to walk to a nearby liquor store. On the way, a red Corvette in which Clay was a passenger drove past, and someone in the Corvette said something to the pair. When Bennett and Hoskins reached the liquor store, Bennett entered and Hoskins remained outside.

According to Hoskins, Bennett emerged from the store approximately fifteen minutes later and told Hoskins about an occurrence inside the store. The nature of that event was excluded from the record, presumably on hearsay grounds, but Hoskins did testify that Bennett had said "I'm not going nowhere" when Hoskins suggested they should leave. The two men ultimately headed back to Leland Street, and were joined on the street in front of 3707 by Lashondra Dyer and Robbi Foster. According to Dyer, Bennett was "upset" and "mad" when he returned.

Several minutes later a dark blue car drove past the house, and Hoskins flagged it down, thinking it was a relative. As he approached the car the driver stepped out, holding a black revolver. Clay emerged on the passenger side holding a silver handgun. After Clay first approached Hoskins, he then walked over to Bennett and shot him two times. Bennett died as a result of a single gunshot wound to the shoulder and neck. Clay was convicted of murder and carrying a handgun without a license, and was sentenced to sixty-five years for the murder, to be served concurrently with one year for carrying a handgun without a license.

### Sufficiency of the Evidence

Clay contends that there was insufficient evidence to convict him of murder or carrying a handgun without a license. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Spurlock v. State*, 675 N.E.2d 312, 314 (Ind.1996). We look to the evidence and the reasonable inferences to be drawn therefrom that support the verdict and will affirm a conviction if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.*

The foregoing account is summarized from the testimony of Foster, Hoskins and Dyer. Only Hoskins and Dyer identified Clay as Bennett's killer.[1] Clay contends the testimony of the three was "inherently incredible," and therefore the State failed to produce sufficient evidence that Clay shot and killed Bennett. Clay also claims that the in-court identifications by Hoskins and Dyer were tainted prior to trial, and that there was no physical evidence to support the identifications.

For testimony to be so inherently incredible that it is disregarded based on a finding of "incredible dubiosity," the witness must present testimony that is inherently contradictory, wholly equivocal or the result of coercion, and there must also be a complete lack of circumstantial evidence of the defendant's guilt. *Lee v. State,* 735 N.E.2d 1169, 1173 (Ind.2000). None of the eyewitnesses meets this standard. Clay argues that there were inconsistencies in the testimony of the three witnesses to the shooting. Although the witnesses were inconsistent with each other, none of the three was internally inconsistent. According to Dyer, Clay held the gun in his right hand, while Hoskins and Foster placed it in Clay's left hand. Dyer said Clay was wearing a hat, while Foster said he was not. Foster testified that she never saw the driver of the vehicle exit it, while Hoskins testified that the driver not only exited, but was also carrying a gun.

These inconsistencies are frequently found in accounts of a chaotic scene such as the sudden emergence of a gunman in an otherwise benign encounter. They bear on the weight and credibility of the testimony of the witnesses, but do not come close to the high standard required to disregard the testimony altogether. All three witnesses testified consistently that they saw a man get out of the dark blue car with a silver handgun, and two identified that man as Clay. There is no inconsistency in these central facts. In sum, both Hoskins and Dyer testified that they saw Clay shoot Bennett. On the basis of this evidence, a reasonable jury could have found Clay guilty beyond a reasonable doubt.

As to the in-court identification of Clay by witness Hoskins, Clay has provided no evidence that this identification was tainted prior to trial. Hoskins stated in a deposition that when he picked Clay out of a photo array, he told the police that Clay "looked like" the passenger in the dark blue car. At trial he testified that Clay was the killer, and identified him in court. Clay argues that Hoskins' deposition demonstrates that the identification was somehow tainted. At trial, Hoskins stated that by signing his name to the photo array he intended to "identify the murderer," and that he had in fact done so. Clay's argument goes to the weight and credibility of Hoskins' testimony. These factors were well within the province of the jury to evaluate. *Soward v. State,* 716 N.E.2d 423, 425 (Ind.1999). They are more than sufficient for a reasonable jury to have found Clay guilty beyond a reasonable doubt.

Clay also contends that Dyer's in-court identification was tainted prior to trial. Clay points to the testimony of police detective Timothy Knight, who first testified that he showed Dyer a still Polaroid of Clay before she identified him from a photo array, but on redirect stated that he showed Dyer the photo only after she had picked Clay from the array. This argu-

---

1. Foster testified that she did not see the shooter because she was focused on the gun and ran away before any shots were fired.

ment again goes to the weight and credibility to be accorded the testimony of a witness. In this case, a reasonable jury could have found Knight to be a credible witness, and could have believed him to have simply misspoken when first asked about the timing of Dyer's examination of the still Polaroid.

Clay's final argument is that there was no physical evidence to support the eyewitness identifications of him as the murderer. Because there was testimony from two eyewitnesses, there was no requirement that physical evidence be presented as well.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.