**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MICHAEL C. BORSCHEL**
Fishers, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Nov 29 2012, 9:44 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CORBIN BARDONNER, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A05-1205-CR-231 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert Altice, Judge
Cause No. 49G02-1106-FA-41787

**November 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Corbin Bardonner appeals his conviction of and sentence for child molesting, a class A felony.[1]

We affirm.

## ISSUES

1. Whether the State presented sufficient evidence to support Bardonner's conviction.

2. Whether the trial court abused its discretion by not considering a mitigating factor at sentencing.

3. Whether the sentence imposed by the trial court is inappropriate.

## FACTS

In or around April 2011, P.A. learned that Bardonner, one of the employees at the Marion County store P.A. managed, was living out of his car in a parking lot. P.A. offered to rent an upstairs bedroom in his Marion County house to Bardonner, and Bardonner accepted the offer. The home was also occupied by P.A.'s three-year-old daughter, R.A., and the paternal grandmother, S.R. R.A. and S.R. had upstairs bedrooms, and P.A., who had a disability that made it difficult for him to climb stairs, had a bedroom in the house's converted garage.

On June 10, 2011, P.A. was hosting a visitor and was watching television in his

---

[1] Ind. Code § 35-42-4-3.

bedroom. At some point during the evening, S.R. suggested that she go to a local fast food restaurant and pick up some food and that P.A. check on R.A.'s whereabouts before S.R. left. P.A. went upstairs and heard R.A.'s voice coming from behind Bardonner's bedroom door. P.A. thought that Bardonner's girlfriend was also there, so he returned downstairs and told S.R. that R.A. was with Bardonner and his girlfriend.

R.A. was in Bardonner's bedroom, but Bardonner's girlfriend was not present. Behind the closed door of his bedroom, Bardonner told R.A. to lie on her back on his futon. After R.A. complied, he knelt beside R.A. and pulled down her shorts and panties. He then touched R.A.'s exterior genitalia, leg, buttocks, and stomach while he masturbated. Bardonner also licked R.A.'s vagina.

When S.R. returned, she called out for R.A., but R.A. did not answer. S.R. went upstairs and checked R.A.'s bedroom, but she was not there. S.R. then went to Bardonner's bedroom, knocked on the closed door, and called for R.A. S.R. did not immediately hear any response, but a few moments later Bardonner partially opened the door. S.R. saw R.A. lying on the bed "stiff as a board with her arms down at her sides." (Tr. 33-34). S.R. thought the situation was strange, so she asked R.A. to come to her.

As R.A. walked toward her, S.R. noticed that she was "walking funny" and realized that both of R.A.'s legs were in one leg of her shorts. (Tr. 34). S.R. helped R.A. to the house's living room. Bardonner, who was concerned about whether R.A. was going to tell S.R. what he had done, eventually came into the room. R.A. began "fidgeting," looked at

3

Bardonner, and said "he licked my butt" while she pointed to Bardonner's room. (Tr. 34). Bardonner did not hear the statement.

Subsequently, Bardonner came to S.R., and, under the guise of talking about his use of the refrigerator, tried to gauge whether S.R. was upset with him. At the time, S.R. noticed that Bardonner had been drinking.

S.R. took R.A. to S.R.'s bedroom, and R.A. slept with her until the early morning hours when P.A. came and took R.A. to his bedroom. R.A. was wearing the same shorts and panties that she had worn prior to and after the molestation. S.R., who worked an early morning shift, left the house without saying anything to P.A. about the events of the previous night. However, that morning R.A. told her father that Bardonner had licked her "butt" three times. (Tr. 17-18). After hearing this, P.A. called Child Protective Services ("CPS").

At CPS's direction, P.A. took R.A. to meet with a forensic child interviewer. During the interview, R.A. referred to her vagina as a "butt" and her buttocks as her "poop butt." (Tr. 67). P.A. then took R.A. to Riley Children's Hospital for a sexual assault examination. DNA testing revealed that Bardonner's saliva was present on R.A.'s external genitalia and on the crotch area of her panties.

Bardonner, who was forty years old at the time the offenses were committed, was arrested and charged with Count 1: child molesting as a class A felony ("deviate sexual conduct committed by a person at least twenty-one years of age"), and Count 2: child molesting as a class C felony ("fondling").

4

At the subsequent jury trial, R.A. testified that Bardonner took off her clothes. She also testified that while shaking his "butt," Bardonner touched her "gina" and "butt" with his tongue. (Tr. 16, 18). She testified that Bardonner licked her "gina" and "butt" three times. (Tr. 17). She further testified that she normally used her "gina" to "go potty." (Tr. 18).

A forensic scientist testified that she performed tests on an external genital swab of R.A.'s genitalia and on transfer paper applied to R.A.'s panties. The forensic scientist verified that the tests revealed saliva on R.A.'s genitalia and the crotch area of R.A.'s panties. The forensic scientist also testified that she took buccal swabs of Bardonner's and R.A.'s saliva.[2] A DNA analyst later testified that DNA testing revealed that Bardonner's saliva was on both R.A.'s genitalia and the crotch of her panties. The analyst testified that "[t]he probability of selecting an unrelated individual at random from the population having the same DNA profile matching [Bardonner was] . . . approximately one in 10 billion . . . ." (Tr. 122).

Bardonner admitted that he put R.A. on the bed, pulled down her shorts and panties, and touched the outside of her genitalia while he masturbated. He testified that he did not lick R.A.'s genitalia but that he did lick his hand before he began to masturbate. He speculated that the saliva on his hand was transferred to R.A. as he touched her genitalia.

After hearing the evidence, the jury found Bardonner guilty of both counts. After a subsequent sentencing hearing, the court found Bardonner's remorse and mental health issues as mitigating circumstances. The court also found his criminal history, his position of trust,

5

and R.A.'s tender age to be aggravating circumstances. The trial court vacated the conviction on Count 2 on double jeopardy grounds and entered a judgment of conviction on Count 1. The court sentenced Bardonner to a fifty-year sentence, with five years suspended. The court further ordered that Bardonner serve three years of his suspended sentence on probation.

Bardonner now appeals.

DECISION

1.    Sufficiency of the Evidence

Bardonner contends that the State failed to present sufficient evidence to support his conviction. Specifically, he contends that the State failed to present credible evidence that he committed sexual deviate conduct by licking R.A.'s vagina.[3] He maintains that R.A.'s testimony that he licked her vagina is incredibly dubious.

Generally, in addressing a claim of insufficient evidence, we consider only the probative evidence and reasonable inferences supporting the jury's verdict. *Glenn v. State*, 884 N.E.2d 347, 355 (Ind. Ct. App. 2008), *trans. denied*. We will not reweigh the evidence or assess witness credibility in reviewing the determination. *Id.* "Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material

---

[2] A buccal swab sample is taken from the inside of a known person's mouth. (Tr. 108).

[3] Ind. Code § 35-42-4-3(a) provides that "[a] person who, with a child under fourteen (14) year of age; performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony." The offense is a class A felony if "it is committed by a person at least twenty-one (21) years of age." I.C. § 35-42-4-3(a)(1). "Deviate sexual conduct" is an act involving "a sex organ of one (1) person and the mouth or anus of another person." I.C. § 35-41-1-9. (recodified as 35-31.5-2-94, effective July 1, 2012).

6

element of the offense." *Alvies v. State*, 905 N.E.2d 57, 61 (Ind. Ct. App. 2009). "Not only must the [jury] determine whom to believe, but also what portions of conflicting testimony to believe." *In re J.L.T.*, 712 N.E.2d 7, 11 (Ind. Ct. App. 1999), *trans. denied*. Further, a conviction may be sustained on the testimony of a single witness or victim. *Lay v. State*, 933 N.E.2d 38, 42 (Ind. Ct. App. 2010), *trans. denied*.

The exception to this standard of review is the "incredible dubiosity" principle, which permits an appellate court to impinge on the jury's function to judge the credibility of the witness. *Gregory v. State*, 885 N.E.2d 697, 705 (Ind. Ct. App. 2008), *trans. denied*. This exception applies only where a sole witness presents inherently improbable and uncorroborated testimony. *Id*. For testimony to be so inherently incredible that it is disregarded based on a finding of "incredible dubiosity," the witness must present testimony that is "inherently contradictory, wholly equivocal or the result of coercion, and there must also be a complete lack of circumstantial evidence of the defendant's guilt." *Clay v. State*, 755 N.E.2d 187, 189 (Ind. 2001). Reversal under this rule is rare and applicable only where the testimony of a single witness is so convoluted and contrary that it "runs counter to human experience and that no reasonable person could believe it." *Edwards v. State*, 753 N.E.2d 618, 623 (Ind. 2001). This principle applies only to the witness's testimony, not to contradictions between that testimony and the witness's pre-trial statements. *Glenn*, 884 N.E.2d at 356.

Here, Bardonner argues that this court should find R.A.'s testimony incredibly

dubious as it relates to her claim that he engaged in deviate criminal contact by licking her vagina. Bardonner emphasizes that he "rebutted" R.A.'s testimony by testifying that he spit on his hands to facilitate his masturbation and then touched R.A.'s vaginal area. He also emphasizes that certain details of R.A.'s testimony conflicted with statements made to the forensic evidence interviewer.

While emphasizing that R.A.'s testimony differs from his testimony, Bardonner does not claim that R.A.'s trial testimony is inherently contradictory, equivocal, or coerced. Thus, Bardonnner's "rebuttal" claim is not an argument that R.A.'s testimony was incredibly dubious. Instead, it is an invitation for us to reweigh and reassess R.A.'s testimony. We will not do so.

As noted above, the incredible dubiosity principle does not apply to Bardonner's claim about inconsistencies between R.A.'s testimony and her out-of-court statements to the forensic child interviewer. *See Glenn*, 884 N.E.2d at 356. These claimed inconsistencies go to weight and credibility, and Bardonner is again inviting us to reweigh and reassess R.A.'s testimony. Again, we will not do so.

In short, Bardonner has failed to show that R.A.'s testimony was either equivocal or that it "runs counter to human experience and that no reasonable person could believe it." *See Edwards*, 753 N.E.2d at 623. Because the incredible dubiosity principle is the basis of Bardonner's sufficiency claim, we conclude that he has failed to establish that the State's evidence is insufficient to support his conviction.

2. <u>Abuse of Discretion</u>

Bardonner contends that the trial court abused its discretion in sentencing by neglecting to consider a mitigating circumstance. Specifically, he claims that the trial court should have found his intoxication was a mitigating circumstance. He emphasizes his trial testimony that he "wasn't thinking" and "didn't know what [he] was doing" at the time he licked R.A.'s vagina. Bardonner's Br. at 14. He cites Indiana Code § 35-38-1-7.1(b)(4) for the proposition that his voluntary intoxication is a mitigating consideration as it tends "to excuse or justify the crime, though failing to establish a defense."

When evaluating sentencing challenges under the advisory sentencing scheme, we first confirm that the trial court issued the required sentencing statement, which includes a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). If the recitation includes a finding of mitigating or aggravating circumstances, the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating. *Id.*

So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

A trial court is not obligated to accept the defendant's argument as to what constitutes

9

a mitigating factor. *Gross v. State*, 769 N.E.2d 1136, 1140 (Ind. 2002). However, the trial court "may not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them." *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001). An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999).

In the present case, Bardonnner's trial testimony belies his assertion that intoxication is a significant mitigating factor. He gave detailed testimony about the molestation that shows he was not in a drunken stupor at the time of the offense. Bardonner was sufficiently lucid when he heard S.R. at his door; he realized that he was in trouble if he did not conceal his actions. Indeed, his awareness of what was happening is shown by his attempt to find out whether R.A. was going to tell S.R. about the molestation and by his subsequent attempt to engage S.R. in conversation to ascertain whether she was upset with him. Given these facts, we cannot say that the trial court abused its discretion in not finding intoxication as a significant mitigating circumstance.

3.    Inappropriate Sentence

Bardonner contends that the sentence imposed by the trial court is inappropriate.[4] Citing *Buchanan v. State*, 699 N.E.2d 655 (Ind. 1998), he argues that imposition of a fifty-

---

[4] "A person who commits a class A felony shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years." I.C. § 35-50-2-4.

10

year sentence is not warranted because R.A. suffered no physical harm. He emphasizes that his offense was not the "worst of the worst." Bardonner's Br. at 17.

The revision of a sentence is authorized by the Indiana Constitution through Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In determining the appropriateness of a sentence, a court of review may consider any factors appearing in the record. *Schumann v. State*, 900 N.E.2d 495, 497 (Ind. Ct. App. 2009). The "nature of the offense" portion of the appropriateness review begins with the advisory sentence. *Anglemyer*, 868 N.E.2d at 491; *Richardson v. State*, 906 N.E.2d 241, 247 (Ind. Ct. App. 2009). The "character of the offender" portion of the sentence review refers to general sentencing considerations and the relevant aggravating and mitigating circumstances. *Major v. State*, 873 N.E.2d 1120, 1131 (Ind. Ct. App. 2007), *trans. denied*. A defendant bears the burden of persuading us that his sentence is inappropriate. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008).

In relation to the nature of the offense, we observe that Bardonnner's victim was only three years old, well below the statutory age element of fourteen. *See* I.C. § 35-42-4-2. The tender age of a victim, standing alone, justifies a sentence greater than the statutory advisory term. *See Quiroz v. State*, 963 N.E.2d 37, 45 (Ind. Ct. App. 2012), *trans. denied*. The offense also violated the trust put in Bardonner and betrayed the generosity provided by

11

R.A.'s family. The abuse of a position of trust also justifies an enhanced sentence. *See Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011).

In relation to the character of the offender, we observe that Bardonner has six prior felony convictions, including a prior child molesting conviction. Indeed, the prior child molesting conviction occurred after Bardonner was charged with, among other things, placing his mouth on a four-year-old girl's genitalia. Furthermore, when asked at the sentencing hearing whether he went through sex-offender counseling after his prior child molesting conviction, Bardonner stated "Not really, I violated my parole and went back to prison." (App. 204). In fact, the pre-sentence report discloses that out of four attempts at probation, Bardonner satisfactorily completed probation only once.

Bardonner also invites us to revise his fifty year sentence downward, arguing that it is an inappropriate maximum sentence. However, we have held that "for purposes of Rule 7(B) review, a maximum sentence is not just a sentence of maximum length, but a *fully executed* sentence of maximum length. Anything less harsh, be it placement in community corrections, probation, or any other available alternative to prison, is simply not a maximum sentence." *See Jenkins v. State*, 909 N.E.2d 1080, 1085-86 (Ind. Ct. App. 2009), *trans. denied*. Here, where the trial court suspended a portion of the sentence and placed Bardonner on probation, it did not impose a maximum sentence. Thus, Bardonner did not receive a maximum sentence for purposes of Appellate Rule 7(B), and we find that his sentence is appropriate.

12

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.