**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 12 2014, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW B. ARNETT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SERGIO C. POITAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 73A01-1402-CR-80 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable Charles D. O'Connor, Judge
Cause No. 73C01-1303-FB-14

**November 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Sergio C. Poitan (Poitan), appeals his conviction of Count I, burglary, a Class B felony, Ind. Code § 35-43-2-1(1)(B)(i); and Count II, theft, a Class D felony, I.C. § 35-43-4-2(a).

We affirm.

## ISSUE

Poitan raises one issue on appeal, which we restate as follows:  Whether there is sufficient evidence to support Poitan's conviction of burglary and theft.

## FACTS AND PROCEDURAL HISTORY

On the evening of June 5, 2012, Jelana King (King) discovered that someone had attempted to break in to her house in Shelbyville, Indiana.  In several of her windows, the screens had been either raised or removed, and King found a discarded masonry trowel next to one of the windows, which appeared to have been used in an effort to pry the window open.  King reported the incident to the Shelbyville Police Department.  She then checked that all of her windows and doors were tightly secured, and she padlocked the gates in the six-foot privacy fence that enclosed her backyard.

The next day, June 6, 2012, King arrived home from work shortly after 6:00 p.m.  When she put her key into the front door, she realized that it was already unlocked.  Inside, King found that her back door had been kicked in and that several items of personal property were missing, including her antique typewriter, thirteen pearl necklaces, a harmonica, several pocket knives, and a few dollars in change.  King again contacted the Shelbyville Police Department, and Officer Adam Stafford (Officer Stafford) and

Detective Deborah Tilman (Detective Tilman) arrived to investigate. Detective Tilman dusted several surfaces in and around King's home for fingerprints but found only smudged prints, which were unsuitable for making an identification.

King identified her fifteen-year-old niece, A.F., as a possible suspect. King informed the officers that on the day prior to the break-in, her neighbor observed two females pull up to King's house in a small, green car. While the driver waited in the car for ten minutes, the passenger—a "short, heavy[]set" female with "dark brown hair, [a] chubby face [and] wearing tight black shorts and a spaghetti strap tank top"—walked to the backside of King's house. (Transcript p. 86). King confirmed that the neighbor's description matched that of A.F. King also suspected the involvement of A.F.'s best friend, Jennifer Chaney (Chaney), who drove a small, green car. Officer Stafford was aware that A.F. had recently been reported as a runaway, and that Chaney was currently serving a sentence on home detention, which required her to wear an electronic monitoring device around her ankle. At Officer Stafford's request, the Community Corrections Department reviewed Chaney's GPS records and reported that on June 5, 2012, from 4:12 p.m. to 4:22 p.m., and again on June 6, 2012, from 3:26 p.m. to 3:36 p.m., Chaney was positioned directly in front of King's house.

On June 8, 2012, Detective Tilman interviewed Chaney. When presented with the GPS tracking records, Chaney confessed that she and A.F. had conspired to steal from King in order to buy spice (synthetic marijuana). However, their attempt on June 5 failed because A.F. was not strong enough to kick the door in or to pry open a window. Thus, when they returned the following day, Chaney and A.F. were accompanied by Chaney's

3

fiancé, Austin Furrer (Furrer), and the Hispanic man with whom A.F. was staying, later identified as Poitan. Chaney disclosed that she and Furrer waited in the car while A.F. and Poitan walked around the house to the backyard. Ten minutes later, A.F. and Poitan emerged from the front door of King's house, carrying King's typewriter, jewelry, and other possessions. Chaney then drove the group to two different pawn shops, but Furrer's attempts to sell the stolen items were unsuccessful. As a result, Chaney gave King's necklaces to her young niece, and A.F. and Poitan took everything else.

Police officers located A.F. on June 11, 2012, and arrested her on runaway and obstruction charges. The next day, Detective Tilman met with A.F. and her mother for an interview, during which A.F. admitted to the burglary and theft. A.F. did not mention Furrer or Poitan in her narrative; instead, she stated that Chaney had kicked open King's back door and that she and Chaney had both taken items from the house, which they were subsequently unable to pawn.

Chaney was convicted of burglary, theft, and obstruction and was sentenced to the Indiana Department of Correction. A.F. pled guilty to the same charges and was ordered to be incarcerated at the Madison Juvenile Correctional Facility. In December of 2012, A.F. was released, and she returned to Shelbyville to live with her mother. Two months later, A.F.'s mother contacted Detective Tilman and stated that A.F. "wanted to come clean about everything cause she felt bad." (Tr. p. 100). When Detective Tilman interviewed A.F. on February 20, 2013, A.F. revised her prior statement to add that Poitan had agreed to assist her after the botched break-in attempt, detailing how he and Chaney helped boost her over the fence before Poitan also jumped over, and that Poitan kicked the back door

4

twice to bust through the deadbolt. A.F. also discussed Furrer's role in attempting to pawn the stolen property.

On February 22, 2013, Detective Tilman learned that an inmate at the Shelby County Jail, Sammie Stubbs, Jr. (Stubbs), had information to provide about a burglary. She met with Stubbs, who explained that for several months, he and Poitan had been incarcerated on the same cellblock, and Poitan had repeatedly bragged about his involvement in a burglary. Stubbs conveyed the specific details he had learned from Poitan, including that Chaney drove Poitan to the targeted house; that Poitan kicked the back door open; that he stole an antique typewriter, a harmonica, and some jewelry; and that Chaney's boyfriend pawned the items.

On March 4, 2013, the State filed an Information charging Poitan with Count I, burglary, a Class B felony; and Count II, theft, a Class D felony. On December 16 and 17, 2013, the trial court conducted a jury trial. At the close of the evidence, the jury returned a verdict of guilty as to both Counts. On January 16, 2014, the trial court conducted a sentencing hearing. The trial court ordered Poitan to serve eleven years in the Department of Correction on Count I and imposed a concurrent term of twenty-one months on Count II. The trial court ordered that Poitan serve this eleven-year sentence consecutive to his sentence imposed in a prior cause.

Poitan now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Poitan claims that the State presented insufficient evidence to support his conviction of burglary and theft. When reviewing a claim of insufficient evidence, our court considers

only the evidence, and any inferences reasonably derived therefrom, most favorable to the verdict. *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012). We must determine whether there is substantial evidence of probative value to support the conviction. *Stewart v. State*, 945 N.E.2d 1277, 1291 (Ind. Ct. App. 2011), *trans. denied*. In order words, if, considering the evidence, a reasonable trier of fact could conclude that the defendant is guilty beyond a reasonable doubt, we will uphold the verdict. *Baker*, 968 N.E.2d at 229. Because evaluations of evidentiary weight and credibility are tasks reserved for the trier of fact, we will not reweigh evidence or judge witness veracity. *Id.*

To convict Poitan of a Class B felony burglary, the State was required to prove, beyond a reasonable doubt, that he broke in to and entered King's dwelling with the intent to commit a felony therein. I.C. § 35-43-2-1(1)(B)(i). As to Poitan's Class D felony theft conviction, the State needed to establish that Poitan "knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use." I.C. § 35-43-4-2(a). Poitan specifically contends that the evidence was insufficient because no DNA, fingerprints, or other physical evidence tied him to the crime scene, and because none of the stolen property was found in his possession. Instead, the State relied on the testimony of A.F., Chaney, and Stubbs, who—according to Poitan—gave inconsistent versions of events.

It is well established that physical evidence linking the defendant to a crime scene is not required to support a conviction. *Clay v. State*, 755 N.E.2d 187, 190 (Ind. 2001). In fact, a conviction may be sustained by the uncorroborated testimony of a single witness, even if that witness acted as an accomplice. *Hobbs v. State*, 548 N.E.2d 164, 168 (Ind.

6

1990). In this case, two of Poitan's accomplices and his former fellow inmate testified regarding Poitan's involvement in the commission of the charged offenses.

First, A.F. testified that Poitan agreed to help steal from her aunt in exchange for a share of the proceeds. She explained that after he assisted her over King's privacy fence, Poitan scaled the fence himself and kicked the back door in. Once inside, A.F. stated that she retrieved the necklaces from King's jewelry box while Poitan heisted the typewriter and harmonica from an upstairs bedroom. They then exited through the front door where Chaney was waiting to drive them to a pawn shop. Similarly, Chaney testified that she drove A.F. and Poitan to King's house, and that A.F. enlisted Poitan in their plan because "he had more muscles than she did to help open or kick in or pry a door open." (Tr. p. 191). Chaney stated that she waited in her car, parked in front of King's house, until A.F. and Poitan emerged from the front door, both carrying items from King's house. Finally, Stubbs testified that Poitan had boasted about the details of the burglary while the two were incarcerated on the same cellblock. According to Stubbs, Chaney drove Poitan to a house where Poitan kicked the back door open and stole an antique typewriter, a harmonica, and some jewelry, which Chaney's boyfriend later pawned.

All together, the evidence adduced through the three witnesses sufficiently establishes that Poitan broke into King's home with the intent to commit theft, and that he exerted unauthorized control over King's possessions with intent to deprive King of the value or use thereof. *See* I.C. §§ 35-43-2-1(1)(B)(i); -4-2(a). Poitan's arguments concerning the reliability and consistency of the testimony amounts to a request that we reweigh the evidence and reassess the credibility of the witnesses, which we decline to do.

7

*See Stewart*, 945 N.E.2d at 1292. In this case, the jury reached its verdict with full knowledge that A.F. and Chaney had admitted to initially making untruthful statements to the police officers. The jury also heard that neither A.F., Chaney, nor Stubbs received any leniency or favorable treatment in exchange for their testimony. Moreover, there is no merit in Poitan's assertions that Stubbs learned about the burglary while appearing in court at the same time as Chaney. At the time Stubbs volunteered specific information to Detective Tilman, Poitan had not been charged in the offense and the details were not publicly available. Stubbs testified that he was not from Shelbyville, that he did not know any of the involved persons, and that he had no prior knowledge of the crime. Thus, Stubbs would have had no other means for discovering how Poitan entered the house or the particular property that was stolen except to have heard it directly from him. Accordingly, we find that the jury had ample evidence from which to find Poitan guilty of burglary and theft.

CONCLUSION

Based on the foregoing, we conclude that the State presented evidence beyond a reasonable doubt to sustain Poitan's conviction of burglary and theft.

Affirmed.

MATHIAS, J. and CRONE, J. concur