

**FILED**

Aug 19 2015, 9:24 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tracy D. Guffey,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 19, 2015

Court of Appeals Case No.
21A01-1410-CR-446

Appeal from the Fayette Circuit
Court

Trial Court Cause No.
21C01-1210-FA-843

The Honorable Beth Ann Butsch,
Judge

**Pyle, Judge.**

# Statement of the Case

Following a jury trial, Guffey was convicted of: (1) Class A felony conspiracy to commit child molesting;[1] (2) Class A felony aiding, inducing, or causing attempted child molesting;[2] (3) Class C felony conspiracy to commit child molesting,[3] (4) Class C felony aiding, inducing, or causing attempted child molesting;[4] and (5) Class B felony aiding, inducing, or causing attempted incest.[5] The jury also determined that he was an habitual offender.[6]

While incarcerated in the county jail, Tracy D. Guffey ("Guffey") made phone calls to his girlfriend. During these phone calls, which were recorded by the jail, Guffey encouraged his girlfriend to have sex with her twelve-year-old son so that she could make sure that he was not gay and told her to give her son alcohol prior to having sex so that he would be more comfortable. When the State moved to admit sixteen of these recorded jail telephone calls into evidence at trial, Guffey objected to fifteen of the calls.

---

[1] IND. CODE §§ 35-42-4-3(a)(1); 35-41-5-2. We note that, effective July 1, 2014, a new version of the child molesting statute was enacted and that Class A felony child molesting is now a Level 1 felony. Because Guffey committed his crime in October 2012, we will apply the statute in effect at that time.

[2] I.C. §§ 35-42-4-3(a)(1); 35-41-2-4; 35-41-5-1.

[3] I.C. §§ 35-42-4-3(b); 35-41-5-2. Pursuant to the 2014 version of the child molesting statute, this Class C felony child molesting offense is now a Level 4 felony.

[4] I.C. §§ 35-42-4-3(b); 35-41-2-4; 35-41-5-1.

[5] I.C. §§ 35-46-1-3; 35-41-2-4; 35-41-5-1. Pursuant to the 2014 version of the incest statute, this Class B felony incest offense is now a Level 4 felony.

[6] I.C. § 35-50-2-8.

[3]     On appeal, Guffey challenges the trial court's admission of these fifteen recordings, argues that his convictions and sentences violate the actual evidence test of the Indiana Double Jeopardy Clause, and contends that there is insufficient evidence to support his convictions.

[4]     Because the record before us reveals that the trial court entered judgment of convictions on Counts II and IV before merging those convictions and that it also entered a separate sentence on Guffey's habitual offender determination instead of enhancing one of his sentences, we remand to the trial court with instructions to correct these irregularities. We also conclude that the trial court did not abuse its discretion by admitting the fifteen recorded jail phone calls because they were relevant to show Guffey's plan and preparation as they related to his conspiracy to commit child molesting charge. Additionally, as the State concedes, the evidence shows a reasonable possibility that Guffey's remaining convictions on Counts I, III, and V were based on the same actual evidence, we remand to the trial court to vacate Counts III and V and instruct that trial court that it may resentence Guffey on Count I. Lastly, we conclude that there was sufficient evidence to support Guffey's Class A felony conspiracy to commit child molesting as charged in Count I.

[5]     We affirm in part, reverse in part, and remand.

## Issues

> 1. Whether the trial court abused its discretion by admitting into evidence recorded jail telephone conversations between Guffey and his co-conspirator.

2. Whether Guffey's convictions violate the Indiana Constitutional prohibition against double jeopardy.

3. Whether sufficient evidence supports Guffey's convictions.

## Facts

In the Fall of 2012, Guffey was incarcerated in the Fayette County Jail. At that time, Guffey had a girlfriend, Amanda Mize ("Mize"). Prior to his incarceration, Guffey lived with Mize and her twelve-year-old son, C.M., who had a learning disability, and her seven-year-old daughter, B.R.

On October 4, 2012, Guffey called Mize from the jail. The jail has a system to record the inmates' telephone calls. While Guffey and Mize were talking, Fayette County Sheriff's Deputy Clint Brown ("Deputy Brown") monitored their conversation. Two other law enforcement officers also listened to the phone conversation as it occurred. Deputy Brown and the officers heard Guffey and Mize discussing a plan for Mize to have sex with her son, C.M. They also heard Guffey tell Mize to buy vodka and juice to mix and give to C.M. Concerned with what Guffey and Mize had discussed, the officers "survey[ed]" Mize after the conversation ended. (Tr. 79). One of the officers saw Mize go into a liquor store and purchase vodka and orange juice. When she exited the store, officers stopped her and arrested her.

Thereafter, Deputy Brown went back to the jail's recording system and listened to the other phone calls that Guffey had made to Mize. He discovered fifteen additional phone calls that Guffey had made between September 9, 2012 and

October 2, 2012, during which Guffey tried to talk Mize into having sex with her son to ensure that he was not gay.[7] Guffey's general plan was for Mize to show C.M. a pornographic movie, give him some alcohol to relax him, and get under the blanket with C.M. while on the phone with Guffey so he could talk her through it. During these phone conversations, when Mize expressed that she was "uncomfortable" with the idea because it was her son and that it was "weird," Guffey stated that it was "normal" and that she needed to get her son to do it. (State's Ex. 1, 4, 6, 11). Guffey also told Mize that she needed to get C.M. to drink some alcohol in orange juice so she could ease him into doing it and that Mize needed to do this for C.M. because it would be hard for him to get a girlfriend. (State's Ex. 12). Guffey reasoned that if Mize had sex with C.M. so that he could "learn[]" it, then C.M. would have a "whole new outlook" and would not be afraid to ask out girls his own age. (State's Ex. 12).

[9]     During Guffey's conversations and attempts to get Mize to go through with the plan, he encouraged Mize to let C.M. watch her masturbate while Guffey was on the phone with her. He also told her that she should give alcohol to C.M. so that he would know what it tasted like and so that he would talk to Mize about drinking when he got older. During one of these recorded conversations, Guffey mentioned that he had previously shown the pornographic movie to C.M. and had given him alcohol. Guffey eventually was able to get Mize to

_____

[7] Guffey made one call on September 9 and 11, three calls on September 12 and 14, two calls on September 24 and 28 and October 1, and one call on October 2.

show C.M. the pornographic movie,[8] and he then wanted to know what C.M.'s reaction was. Guffey also talked Mize into showing C.M. her breast and into masturbating on the bed while her kids were on the floor watching their own movie. Guffey also talked on the phone to C.M. and told him to touch Mize's "boob" and to tell his mother that he wanted to have sex. (State's Ex. 10, 13). Guffey told Mize that he would "coach" her and explained to her how to talk to C.M. so that he would know that he would not get into trouble. (State's Ex. 8, 12).

[10] The State charged Guffey with: Count I, Class A felony conspiracy to commit child molesting; Count II, Class A felony aiding, inducing, or causing an attempted child molesting; Count III, Class C felony conspiracy to commit child molesting; Count IV, Class C felony aiding, inducing, or causing an attempted child molesting; and Count V, Class B felony aiding, inducing, or causing an attempted incest. The State also alleged that Guffey was an habitual offender.[9]

[11] Prior to trial, Guffey filed a motion in limine, generally seeking to have the trial court exclude "evidence of certain alleged other misconduct" that the "State may seek to admit at the trial[.]" (App. 91).[10] Guffey did not specify what

---

[8] Guffey also had Mize show the pornographic movie to B.R.

[9] The State later amended the charging information to include a Class A felony child molesting charge and a Class D felony dissemination of matter harmful to minors charge, but the State dismissed these additional charges prior to trial.

[10] Guffey also filed other motions in limine, which are not at issue in this appeal.

exact misconduct or acts he sought to exclude but argued that any such evidence should be excluded based on Evidence Rule 404(b). Guffey acknowledged that this rule allowed the admission of misconduct evidence for "certain other purposes" but argued that "no such purpose exist[ed]." (App. 91). He also argued that the evidence should be excluded, pursuant to Evidence Rule 403, because it was unfairly prejudicial. The trial court initially granted Guffey's limine motion as it related to introducing evidence of misconduct.

[12] The trial court held a pretrial hearing on September 5, 2014. During that hearing, Guffey argued that the State should be precluded, based on Evidence Rule 404(b), from introducing evidence of his recorded jail telephone conversations with Mize that occurred prior to October 4, 2012, contending that the content of those recorded calls were not "parallel" to his charges and that the recordings contained uncharged misconduct by Guffey. (Pretrial Hrg. Tr. 7).[11] He also argued that they would be prejudicial. The fifteen recordings at issue, which occurred prior to October 4, included conversations that occurred between September 9 and October 2, 2012. The State argued that these recordings were admissible, pursuant to Rule 404(b), to show a plan because "[i]t took some talking on Mr. Guffey's part to get Amanda Mize to the point where she was agreeable to this plan" of having sex with her son. (Pretrial Hrg. Tr. 5). The State further explained that the plan began on

---

[11] Contrary to Appellate Rule 28(A)(2), the Transcript was divided into separate volumes based on the various hearings and was not numbered consecutively. Thus, we will cite to the relevant transcript based on its subject matter.

September 9, 2012, continued with the "grooming of how to make everybody comfortable with the situation" and "evolve[d] into using tools such as alcohol[.]" (Pretrial Hrg. Tr. 8). The State informed the trial court that it had edited the recordings to omit any prejudicial information, such as the announcement at the beginning of the phone call stating that the call was from an inmate at the Fayette County Jail, any information that would get into Guffey's failure to register as a sex offender case, and any reference to his sentencing on his escape case and habitual offender determination for which he was incarcerated. The trial court ruled that the recordings were admissible to the extent they were part of the plan to try to molest C.M.

[13] On September 8 and 9, 2014, the trial court held a jury trial. During the trial, Mize, who had already been convicted for her part of the conspiracy at issue,[12] testified that she and Guffey had entered into an agreement that she would have sex with her son, C.M. Additionally, Mize testified that she had purchased the vodka and orange juice so that it would be easier to get C.M. to have sex with her. She acknowledged that she had previously made contrary statements about her purpose for purchasing the vodka.[13] Mize, however, disavowed these previous statements and testified that she had actually purchased it to give to

---

[12] Mize testified that, after she had been charged as a result of her actions on October 4, 2012, she had pled guilty to conspiracy to commit attempted child molesting, and was serving a twenty-year sentence, with ten years executed and ten years suspended to probation. Additionally, she testified that she was testifying at Guffey's trial as part of her plea agreement.

[13] She acknowledged that she had previously told a Department of Child Services ("DCS") worker in October 2012 that she had a drinking problem with vodka and that she had previously stated, in a deposition with Guffey's attorney, that she had purchased the vodka and orange juice for her own consumption.

C.M. She also testified that if she had not been arrested, then she would have "probably . . . went [sic] through [with] what [Guffey] told [her] to do" and she would have tried to have sex with C.M. (Tr. 71).

[14] When the State moved to introduce the recorded jail telephone conversations, State's Exhibits 1-16, Guffey's counsel approached the bench to raise his objection. The trial court then stated that Guffey's objection was the "same" as he had made during the pretrial hearing. (Tr. 60). Thus, Guffey's objection was specifically to State's Exhibits 1-15—the recorded conversations that occurred prior to October 4, 2012—and was based on Evidence Rule 404(b) and prejudice. The trial court overruled Guffey's objection, explaining that the recordings were admissible because they were introduced to show plan and preparation and were not prejudicial.

[15] The jury found Guffey guilty as charged and then determined that he was an habitual offender. The record on appeal indicates that the trial court, prior to sentencing, entered judgment of conviction on all five counts. (*See* App. 13, 159-62; Sent. Tr. 4). At the subsequent sentencing hearing, the trial court merged Count II into Count I and Count IV into Count III and imposed an aggregate eighty-five (85) year sentence.[14] Guffey now appeals.

---

[14] At the sentencing hearing, the trial court merged Count II into Count I and imposed a thirty-five (35) year sentence on that Class A felony conspiracy to commit child molesting conviction. The trial court also merged Count IV into Count III, imposed an eight (8) year sentence on that Class C felony conspiracy to commit child molesting conviction and ordered it to be served concurrently with the sentence in Count I. On Count V, the Class B felony aiding, inducing, or causing an attempted incest conviction, the trial court imposed a twenty (20) year sentence and ordered it to be served consecutively to the sentence in Count I.

# Decision

Guffey argues that: (1) the trial court abused its discretion by admitting fifteen recordings of his telephone conversations with Mize; (2) his convictions and sentences violate the prohibition against double jeopardy; and (3) there is insufficient evidence to support his convictions. We will address each argument in turn.

## 1. Admission of Evidence

Guffey argues that the trial court abused its discretion by admitting State's Exhibits 1-15. These exhibits contained fifteen of Guffey's recorded jail telephone conversations with Mize (and, at times, C.M.) wherein Guffey

---

During the sentencing hearing, the trial court stated that it was imposing a separate thirty (30) year sentence for Guffey's habitual offender determination. Additionally, the sentencing order, abstract of judgment, and chronological case summary indicate that the trial court imposed a separate thirty (30) year sentence for Guffey's habitual offender finding and ordered that it be served consecutively to Counts I, III, and V.

In regard to the trial court's act of merging Count II and Count IV, which were convictions for which the trial court had already entered a judgment of conviction, we note that "[a] trial court's act of merging, without also vacating the conviction, is not sufficient to cure a double jeopardy violation" and that such a violation cannot be remedied by the "practical effect" of merging after a conviction has been entered. *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied. See also Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) (explaining that "a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned"). Because the record reveals that the trial court entered judgment of conviction on Counts II and IV prior to merging these convictions, we remand this cause to the trial court with instructions to vacate Guffey's judgment of convictions on Count II and Count IV.

We also remand this cause for the trial court to correct its sentencing as it relates to the habitual offender enhancement. It is well settled that an "habitual offender finding does not constitute a separate crime nor does it result in a separate sentence, rather it results in a sentence enhancement imposed upon the conviction of a subsequent felony." *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001) (citing *Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997); *Pinkston v. State*, 436 N.E.2d 306, 307-08 (Ind. 1982)). Because the trial court entered a separate sentence on Guffey's habitual offender determination, we remand to the trial court with instructions to correct the sentencing order, abstract of judgment, and chronological case summary to reflect that the thirty (30) year habitual offender enhancement serves as an enhancement of Guffey's Class A felony sentence in Count I.

encouraged Mize to have sex with C.M. Guffey asserts that the recordings contained "substantial evidence of uncharged misconduct by Guffey, including improprieties with respect to C.M. and prior bad acts unrelated to any sex offense." (Guffey's Br. 7). He contends that such evidence should have been excluded pursuant to Indiana Evidence Rule 404(b).

[18] The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

[19] Indiana Evidence Rule 404(b) provides that:

> (1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses* . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, *preparation, plan,* knowledge, identity, absence of mistake, or lack of accident . . . .

(Emphasis added).

[20] "Rule 404(b) is designed to prevent the jury from making the forbidden inference that prior wrongful conduct suggests present guilt." *Halliburton v. State*, 1 N.E.3d 670, 681 (Ind. 2013) (citation and internal quotation marks

omitted). *See also Hicks v. State*, 690 N.E.2d 215, 218 (Ind. 1997) (explaining that Evidence Rule 404(b) is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities"). "The paradigm of such inadmissible evidence is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes." *Swanson v. State*, 666 N.E.2d 397, 398 (Ind. 1996), *reh'g denied*.

[21] In determining whether to admit evidence of specific acts under Rule 404(b), the trial court is required to: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; (2) determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act; and (3) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403.[15] *Camm v. State*, 908 N.E.2d 215, 223 (Ind. 2009), *reh'g denied*. "In short, if the evidence bears on some issue other than criminal propensity and clears the balancing hurdle of Rule 403, it is admissible." *Roop v. State*, 730 N.E.2d 1267, 1270 (Ind. 2000).

[22] Guffey asserts that State's Exhibits 1-15 were inadmissible under Indiana Evidence Rule 404(b), contending that they were "offered solely to show [his]

---

[15] Evidence Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

bad character and his propensity [to] act in conformance with that bad character." (Guffey's Br. 7-8).[16] Alternately, he argues that even if the evidence were admissible under Rule 404(b), then it should have been excluded under Evidence Rule 403 because it was prejudicial.

[23] The State argues that the recorded jail phone conversations were admissible under Evidence Rule 404(b)(2) because the "conversations [we]re relevant to the instant case because they show[ed] [Guffey's] plan and preparation for the molestation of twelve-year-old C.M." and showed his "manipulative efforts to break down his co-conspirator's resistance to the plan." (State's Br. 10-11). The State contends that the conversations in the recordings were "very relevant" because they reveal how Guffey "step by step, managed to convince Mize to agree to an act that she initially characterized as 'weird' and with which she was not comfortable[.]" (State's Br. 16). Additionally, the State asserts that the recorded conversations were "probative evidence" because they showed that Guffey "groomed both Mize and C.M. for the sexual act by

---

[16] In his motion in limine and during trial, Guffey generally objected to the recorded jail telephone calls in their entirety and did not specifically set out any specific act mentioned in the conversations that he thought should be excluded under Rule 404(b). On appeal, however, he lists specific acts that he claims should have been excluded. Specifically, Guffey argues that the trial court erred by admitting these exhibits because the recordings revealed that Guffey: (1) had given alcohol to C.M.; (2) had shown C.M. a pornographic movie; (3) repeatedly encouraged Mize to show the pornographic movie to C.M. and his seven-year-old sister; (4) instructed C.M. to tell Mize that C.M. wanted to have sex with her; (5) encouraged C.M. to touch or pinch Mize's breasts; (6) told Mize to masturbate in front of her children; and (7) suggested that Mize undress in her children's presence. Because Guffey's trial objection did not address these specific acts, we will address his argument in the context of excluding the exhibits as a whole. *See Treadway v. State*, 924 N.E.2d 621, 631 (Ind. 2010) ("A party may not add to or change his grounds for objections in the reviewing court.").

introducing different sexual elements into the conversation and having Mize disrobe and perform sexual acts in the presence of her children." (State's Br. 16). Alternatively, the State argues that any error in the admission of the recordings was harmless error because Mize testified that she and Guffey had agreed that she would have sex with C.M. and would give him vodka and orange juice, that she went to a liquor store and bought the alcohol, and that she would have carried out the plan if she had not been arrested.

[24] We agree with the State that the trial court did not abuse its discretion by admitting the jail telephone recordings into evidence. First, the recorded conversations in State's Exhibits 1-15 were relevant to a matter other than Guffey's propensity to commit the charged act. Indeed, the recordings were relevant to show Guffey's plan and preparation as they related to his conspiracy to commit child molesting charge as they showed the groundwork laid by Guffey to get Mize to enter into an agreement for her to have sex with her son. They also showed Guffey's preparation and grooming of Mize and C.M. to encourage their willingness, get them more comfortable, and prime them for a sexual act.

[25] We have previously held that a defendant's planning and grooming were relevant and established a valid basis for the admission of prior acts under Rule 404(b). *See Piercefield v. State*, 877 N.E.2d 1213, 1216 (Ind. Ct. App. 2007), *trans. denied*. In *Piercefield*, we explained that "'[g]rooming' is 'the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point' where it is possible to perpetrate a sex crime against the

victim." *Id.* (quoting *U.S. v. Johnson,* 132 F.3d 1279, 1283 n.2 (9th Cir. 1997)). In that case, we found that the defendant's prior acts of having his stepchildren massage him was relevant under Rule 404(b) to show the defendant's preparation, plan, and grooming because he was familiarizing the children to touching his body. *Id.* at 1216. Here, Guffey's acts of encouraging C.M.'s exposure to alcohol and sexually-tinged content and acts were done to prepare C.M. to be more comfortable with the eventual sexual act with Mize that Guffey and Mize had planned for him. Additionally, the recorded jail conversations, which occurred close in time to the final phone conversation on October 4, 2012, "complete[d] the story of the crime" and were relevant to a matter at issue other than the defendant's propensity to commit the charged act. *See Wages v. State*, 863 N.E.2d 408, 411 (Ind. Ct. App. 2007) (explaining that evidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted).

[26]  In regard to the second consideration when reviewing the admission of evidence under Rule 404(b), we note that the State had sufficient proof that Guffey had committed the act or offense as charged because Mize testified that she and Guffey had an agreement that she would have sex with her son, and she testified that she purchased vodka and juice in furtherance of that agreement. Lastly, when balancing the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403, we conclude that any prejudice that may have possibly arisen from the recordings did not

substantially outweigh the probative value of the evidence.  Thus, the trial court did not abuse its discretion by admitting State's Exhibits 1-15 into evidence.[17] *See, e.g., Piercefield*, 877 N.E.2d at 1216.

## 2. Double Jeopardy

Guffey also argues that his convictions violate the prohibition against double jeopardy.  Specifically, he asserts that "[e]ntry of judgment of conviction as to four of the five counts violated Art. I, section 14" of the Indiana Constitution because his convictions all rested on the same evidence of his discussions with Mize regarding Mize having sexual intercourse with C.M. and Mize's purchase of the vodka and orange juice.  (Guffey's Br. 16).

Guffey acknowledges that the trial court merged Count II into Count I and Count IV into Count III.  He, however, argues that the trial court's merger of some of the convictions was "improper and inadequate to resolve the double jeopardy issues." (Guffey's Br. 16).  He requests that "this Court reverse on double jeopardy grounds the trial court's entry of judgment of conviction as to all counts other than Count I, Conspiracy to Commit Child Molesting, a Class A felony[.]"  (Guffey's Br. 21-22).  Because we have already remanded this case

---

[17] Moreover, any error in the admission of the State's Exhibits 1-15 would have been harmless as there was substantial evidence of Guffey's guilt independent of the challenged recordings (i.e., Mize's testimony and State's Exhibit 16—the October 4, 2012 telephone conversation that Guffey did not challenge).  *See Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000) (explaining that "[t]he improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction" and holding that the erroneous admission of Rule 404(b) evidence was harmless error), *reh'g denied*.

for the trial court to vacate the judgment of convictions on Count II and Count IV, *see* footnote 14, we need not further address this argument.

[29] Thus, here, for purposes of addressing Guffey's double jeopardy argument, we need only look at whether there is a double jeopardy violation in regard to Counts I, III, and V. Before addressing Guffey's arguments, we note that the Indiana Double Jeopardy Clause provides, in relevant part, that "No person shall be put in jeopardy twice for the same offense." IND. CONST. art. I, § 14. "Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Consequently, two or more offenses are the "same offense" and violate the Indiana Double Jeopardy Clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.*

[30] Guffey argues that the Double Jeopardy Clause was violated under the actual evidence test. A double jeopardy violation occurs under the actual evidence test if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id*. at 53. "[A] 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). "Rather, 'reasonable possibility' turns on a

practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* *See also Griffin v. State,* 717 N.E.2d 73, 89 (Ind. 1999) ("To establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote."), *cert. denied.* In applying the actual evidence test, this Court must identify the essential elements of each offense and evaluate the evidence from the trier of fact's perspective. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002). "In determining the facts used by the fact-finder, it is appropriate to consider the charging information, jury instructions, and arguments of counsel." *Lee*, 892 N.E.2d at 1234 (citing *Spivey*, 761 N.E.2d at 832 and *Richardson*, 717 N.E.2d at 54 n.48).

[31] Here, the State charged Guffey, in Count I, with Class A felony conspiracy to commit child molesting, which required the State to prove beyond a reasonable doubt that Guffey with intent to commit the felony of child molesting agreed with Mize for her to perform or submit to sexual intercourse or deviate sexual conduct with C.M., a child under fourteen years of age, and that Mize purchased vodka and orange juice to facilitate the offense. *See* (App. 20); *see also* I.C. §§ 35-42-4-3(a)(1); 35-41-5-2. For the Class C felony conspiracy to commit child molesting offense as charged in Count III, the State was required to prove beyond a reasonable doubt that Guffey agreed with Mize to perform or submit to fondling or touching with C.M., a child under fourteen years of age, and that Mize purchased vodka and orange juice to facilitate the offense. *See* (App. 21); *see also* I.C. §§ 35-42-4-3(b); 35-41-5-2. Lastly, for the Class B felony

aiding, inducing, or causing incest offense as charged in Count V, the State was required to show that Guffey aided, induced, or caused Mize to attempt to engage in sexual intercourse or deviate sexual conduct with C.M., a child less than sixteen years of age, who Mize knew was biologically related to her. *See* (App. 21); *see also* I.C. §§ 35-46-1-3; 35-41-2-4; 35-41-5-1. At trial, the State relied on the evidence that Guffey had gotten Mize to agree to have sex with her son and that she went to the liquor store to buy vodka to give him to make him more comfortable. During closing arguments, the State argued that this evidence would support Guffey's offenses in Count I, III, and V. In fact, the State, while explaining that the "only difference" between the Class A felony and Class C felony offenses in Counts I and III was the act of sexual intercourse versus fondling, acknowledged that Guffey and Mize did not talk about fondling or touching and asserted that the jury could "believe" that there "w[ould] be fondling and touching in order to accomplish the [sex] act." (Tr. 116).

[32] The State properly concedes that Guffey's "convictions on Counts III and V violate[d] [Guffey's] double jeopardy protections[]" because "Counts I through V were all based on the same act[.]" (State's Br. 19). Accordingly, we remand to the trial court to vacate Counts III and V. The State requests that, when remanding this case, we instruct the trial court that it may resentence Guffey to a higher sentence on the Class A felony conviction in Count I "because it appears that the trial court intended to impose on [Guffey] a substantial penalty

for his offenses[.]" (State's Br. 20). Guffey, however, argues that the trial court should not be allowed to impose a harsher sentence on remand.

[33]     We have held that, on resentencing after the reversal of a conviction in a multi-count proceeding, the trial court has "flexibility upon remand, including the ability to increase sentences for individual convictions without giving rise to a presumption of vindictive sentencing, so long as the aggregate sentence is no longer than originally imposed." *Sanjari v. State*, 981 N.E.2d 578, 583 (Ind. Ct. App. 2013), *trans. denied.* In so holding, we explained that "a trial court is likely to view individual sentences in a multi-count proceeding as part of an overall plan, a plan that can be overthrown if one or more of the convictions is reversed or reduced in degree." *Id.* (relying on *U.S. v. Shue*, 825 F.2d 1111, 1114 (7th Cir. 1987), *cert. denied*; *U.S. v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir. 1989), *cert. denied*). Given the circumstances of this case, we remand to the trial court to vacate Counts III and V, and we instruct the trial court that it may resentence Guffey on Count I.[18]

---

[18] Additionally, as discussed in footnote 14, we remind the trial court that it shall not enter a separate sentence for the habitual offender determination but, instead, it shall use the habitual offender determination to enhance the sentence in Count I.

### 3. Sufficiency of the Evidence

[34] Guffey argues that the evidence was insufficient to support his conviction for Class A felony conspiracy to commit child molesting as contained in Count I.[19]

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original).

[35] To convict Guffey of Class A felony conspiracy to commit child molesting as charged in Count I, the State was required to prove beyond a reasonable doubt that Guffey, "with intent to commit the felony" of child molesting, agreed with Mize, who was at least twenty-one years old, to perform or submit to "sexual intercourse or deviate sexual conduct" with C.M., a child under fourteen years

---

[19] Guffey also challenged the sufficiency of the evidence to support his other convictions. Because we have determined that his other convictions must be vacated as explained above, we need not address Guffey's challenge to the sufficiency of the evidence on these other counts.

of age, and that Mize "performed an overt act in furtherance of the agreement" by "obtaining an alcoholic beverage, vodka, and a mixer, orange juice, to provide to the child to facilitate the offense[.]"  I.C. §§ 35-42-4-3(b) (2012); 35-41-5-2 (2012); (App. 20).

[36]  Guffey argues that the State failed to prove beyond a reasonable doubt that there was:  (1) the existence of an agreement between Mize and him to commit the Class A felony child molesting offense; and (2) an overt act in furtherance of the agreement.

[37]  "In proving the agreement element, the State is not required to show an express formal agreement, and proof of the conspiracy may rest entirely on circumstantial evidence."  *Fry v. State*, 748 N.E.2d 369, 374 (Ind. 2001).  In regard to this element, Guffey acknowledges that Mize testified at trial that she and Guffey had reached an agreement.  He contends, however, that there was evidence that contradicted her trial testimony.  Specifically, he argues that the recorded jail telephone conversations show that Mize "repeatedly objected to Guffey's suggestion that she engage in sexual contact with C.M."  (Guffey's Br. 24).  We find Guffey's reliance on these recordings, which include the recordings in State's Exhibits 1-15, to be disingenuous as he previously argued in this appeal that these recordings should have been excluded from evidence.  Nevertheless, although Mize expressed some reluctance to engage in a sexual act with her son, the evidence shows that she, upon Guffey's encouragement, agreed to do so.  Moreover, Mize expressly testified that she and Guffey did enter into an agreement.  Thus, we reject Guffey's argument as it is merely a

request to reweigh the evidence, which we will not do. *See Drane*, 867 N.E.2d at 146.

[38] In regard to the overt act element, Guffey contends that the evidence that Mize purchased the vodka and orange juice was not sufficient to show that it was an overt act in furtherance of the agreement to commit child molesting. He contends, instead, that her act of purchasing these beverages was merely for her personal consumption and not in furtherance of any agreement to commit child molesting. In his appellate brief, he acknowledges that Mize testified that she bought the vodka and orange juice to give to her son "for the purpose of easing the task of having sex with her son." (Guffey's Br. 7). Nevertheless, he contends that this evidence was not sufficient to show that it was an overt act in furtherance of the agreement because she had, prior to trial, made some statements (in a pretrial deposition and to a Department of Child Services worker) that suggested that she had purchased the vodka and orange juice for herself.

[39] Guffey's argument is nothing more than an invitation for this Court to reweigh the evidence and judge the credibility of the witness, which we decline to do. *See Drane*, 867 N.E.2d at 146. Guffey made this same argument to the jury during closing argument. The jury rejected his argument and believed Mize's testimony regarding her purpose for purchasing the alcohol, and we decline to impinge upon the jury's credibility determination and weighing of the evidence. Because there is probative evidence from which the jury could have found

Guffey guilty beyond a reasonable doubt of Class A felony conspiracy to commit child molesting as charged in Count I, we affirm his conviction.

[40] Affirmed in part, reversed in part, and remanded.

Crone, J., and Brown, J., concur.