## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2018, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mary P. Lake
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Oscar K. Griffin, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 30, 2018 <br><br> Court of Appeals Case No. <br> 46A05-1703-CR-647 <br><br> Appeal from the La Porte Circuit Court <br><br> The Honorable Thomas J. Alevizos, Judge <br><br> Trial Court Cause No. <br> 46C01-1606-F5-538 |

**Najam, Judge.**

# Statement of the Case

Oscar K. Griffin appeals his conviction and sentence for conspiracy to commit robbery, as a Level 3 felony, and his sentence following his conviction for dealing in methamphetamine, as a Level 5 felony. He raises two issues for our review, which we restate as follows:

1.  Whether the State presented sufficient evidence to support his conviction for conspiracy to commit robbery.[1]

2.  Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

# Facts and Procedural History

Gina Holliday resided in Fort Wayne with her girlfriend, Dovie Neer. At some point in 2016, Holliday and Neer began spending time with Griffin, Mario Hanserd, and Chaniqua Sparks. One day, Holliday and Neer came up with an idea to "take some drugs down to LaPorte" in order to make some money. Tr. Vol. III at 73. Griffin, Hanserd, and Sparks were with Holliday and Neer when Holliday and Neer came up with the idea, and they decided that they wanted to participate in the plan. On June 22, Holliday contacted Felicia Felix, who was a confidential informant for the LaPorte County Metro Drug Task Force ("DTF"). Holliday asked Felix if Felix wanted to purchase a large quantity of

---

[1] Griffin does not appeal his conviction for dealing in methamphetamine, as a Level 5 felony.

drugs, which included methamphetamine, synthetic marijuana, Vicodin, and Percocet, for $2,100, and Felix agreed. At some point after Holliday had contacted her, Felix contacted Detective Rudy Esparza with the DTF to inform him that Holliday, Holliday's girlfriend, and three other individuals whom Felix did not know "were coming in with lots of drugs and that they had weapons." *Id*. at 56.

[4] When Griffin, Holliday, Neer, Hanserd, and Sparks left Fort Wayne to meet Felix at the agreed-upon location for their exchange, they did not have the synthetic marijuana, Vicodin, or Percocet that they had originally offered to sell to Felix. Instead, they planned to sell Felix catnip that Hanserd and Griffin had packaged to look like synthetic marijuana, and they also planned to sell her antibiotics instead of the Vicodin and Percocet. They did have a small amount of methamphetamine.

[5] The five individuals left on June 22 and arrived in LaPorte to meet Felix in the early morning hours of June 23. While they were en route, Holliday and Neer communicated with Felix, but there were times when Felix did not answer her phone. This made Griffin angry. When Felix did not answer her phone on one occasion, Griffin said, "I don't care what we got to do, we're getting this money." *Id*. at 79. He further stated that he would "pistol smack [Felix] if I have to." *Id*. Holliday and Felix made a plan to meet in the Wal-Mart parking lot later that afternoon to complete the transaction.

[6] Detective Esparza, along with two other detectives, met with Felix prior to the deal and told her that the situation was too dangerous for her. As such, the DTF officers chose Detective Esparza to participate in the transaction as an undercover officer. Felix informed Holliday that she was trying to steer clear of drugs, so she was no longer going to purchase the drugs. Instead, Felix told Holliday that a male dealer was going to buy the drugs. The five dealers "started getting in an uproar kind of. Like, they were scared, because they were expecting a white girl[.]" *Id*. at 159. Even so, they proceeded with the arrangement.

[7] At approximately 2:00 p.m., the group arrived at the Wal-Mart parking lot. Griffin moved back to the hatch area of the vehicle and Hanserd ducked down to hide in the back seat. Holliday and Sparks then exited the vehicle and met Detective Esparza, whom they believed to be the buyer Felix had sent. Detective Esparza told Holliday and Sparks that he only wanted to buy a sample of the methamphetamine instead of the entirety of the contraband that Felix had originally agreed to purchase.

[8] Holliday and Sparks returned to the vehicle to get the requested amount. When Griffin learned that Detective Esparza only wanted to buy eighty dollars' worth of methamphetamine, he got angry and loud. He said that they were "going to get this money. I don't care what we got to do." *Id*. at 87. Griffin wanted to "driv[e] up on the deal" and use the gun to scare the putative buyer. *Id.* But Neer, who was in the driver's seat, did not move the car, and Holliday and Sparks completed the transaction. When Holliday and Sparks returned to the

vehicle, several police officers who had watched the exchange surrounded the vehicle and arrested Griffin and the other four individuals. The officers discovered that Griffin had brought a BB gun with him and that Hanserd had brought a 9mm handgun.

[9] The State charged Griffin with dealing in methamphetamine, as a Level 5 felony (Count I); attempt to commit robbery, as a Level 3 felony (Count II); and conspiracy to commit robbery, as a Level 3 felony (Count III). The trial court held a jury trial on January 9-10, 2017. During the trial, the State presented the testimony of Neer and Holliday. Neer testified that, when Griffin and Hanserd learned that Detective Esparza was only going to buy eighty dollars' worth of methamphetamine, they talked "about driving up on the deal, talking about doing what they needed to do, jumping out, using whatever to get the money and to just hurry up and drive off." *Id*. Holliday testified that Griffin and Hanserd had hidden themselves in the vehicle because "they were going to try to jump out and scare this guy. They were gonna do what they could. Because like I said, they were determined that they weren't leaving empty-handed no matter what." *Id*. at 161. At the end of the trial, the jury found Griffin guilty of Count I and Count III but not guilty of Count II. The trial court entered judgment of conviction accordingly.

[10] The trial court held a sentencing hearing on February 24. During the sentencing hearing, the trial court identified Griffin's criminal history as an aggravating factor. It did not find any mitigating factors. The court sentenced Griffin to concurrent sentences of twelve years in the Department of Correction

for the conspiracy to commit robbery conviction and four and one-half years for the dealing in methamphetamine conviction. This appeal ensued.

# Discussion and Decision

## Issue One: Sufficiency of the Evidence

[11] Griffin first contends that the State failed to present sufficient evidence to support his conviction for conspiracy to commit robbery. Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh the evidence. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

[12] A person commits robbery, as a Level 3 felony, when that person, while armed with a deadly weapon, knowingly or intentionally takes property from another person by using or threatening the use of force on any person or by putting any person in fear. Ind. Code § 35-42-5-1(a). And a "person conspires to commit a felony when, with intent to commit the felony, the person agrees with another person to commit the felony." I.C. § 35-41-5-2(a). To prove conspiracy, the State "must allege and prove that either the person or the person with whom he or she agreed performed an overt act in furtherance of the agreement." I.C. § 35-41-5-2(b). Griffin maintains that "[t]here is no evidence pointing to the

existence of an independent agreement with Griffin, [Hanserd], and [Sparks] . . . to commit a robbery."[2] Appellant's Br. at 16.

[13] The State is not required to prove that an express, formal agreement existed. *Guffey v. State*, 42 N.E.3d 152, 164 (Ind. Ct. App. 2015), *trans. denied*. Instead, "[i]t is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense . . . . This may be inferred from the acts committed and the circumstances surrounding the defendant's involvement." *Conn v. State*, 948 N.E.2d 849, 853 (Ind. Ct. App. 2011) (quoting *Minniefield v. State*, 512 N.E.2d 1103, 1105 (Ind. 1987)) (omission original to *Conn*). Therefore, proof of the conspiracy may rest entirely on circumstantial evidence. *Id*.

[14] Here, the evidence most favorable to the judgment includes Neer's testimony that Griffin had stated that he would use force to obtain the money and that Griffin had talked about "driving up on the deal" and "doing what they needed to do" and "using whatever to get the money[.]" Tr. Vol. III at 87. It also includes the State's evidence that both Griffin and Hanserd brought weapons with them and that the two men hid in the vehicle during the transaction because they "were going to try to jump out and scare this guy. They were

---

[2] Griffin only contends that the State failed to present sufficient evidence that an agreement existed. He does not contend that the State failed to present sufficient evidence that he, or another person, performed an overt act in furtherance of the agreement.

gonna do what they could. Because like I said, they were determined that they weren't leaving empty-handed no matter what." *Id*. at 161.

[15] We hold that the State presented sufficient evidence from which a reasonable jury could infer that Griffin and Hanserd had an agreement to rob the undercover officer, and that the robbery would have happened but for the fact that Neer refused Griffin's request to move the car. *See Conn*, 984 N.E.2d at 853. Griffin's assertion that there was no separate agreement to commit robbery amounts to a request that we reweigh the evidence, which we cannot do. *See Love*, 73 N.E.3d at 696. Accordingly, we affirm Griffin's conviction for conspiracy to commit robbery, as a Level 3 felony.

### Issue Two: Inappropriateness of Sentence

[16] Griffin also contends that his sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.

2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.), as amended (July 10, 2007), *decision clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[17] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[18] Here, the trial court identified Griffin's criminal history as an aggravating factor, and it did not find any mitigating factors. The sentencing range for a Level 3 felony is three years to sixteen years, with an advisory sentence of nine years. I.C. § 35-50-2-5(b). And the sentencing range for a Level 5 felony is one year to six years, with an advisory sentence of three years. I.C. § 35-50-2-6(b).

The trial court sentenced Griffin to a sentence of twelve years for his conviction for a Level 3 felony and a sentence of four and one-half years for his conviction for a Level 5 felony, which the court ordered to be served concurrently.

[19] Griffin asserts that his sentence is inappropriate in light of the nature of the offense because his "participation in the crimes was limited to his agreement to participate in the preparation and packaging of catnip to pass off as synthetic marijuana." Appellant's Br. at 18. But the State points out that Griffin "urg[ed] the others to use whatever force was necessary to obtain the money" from the undercover officer. Appellee's Br. at 22. Further, Griffin brought a weapon with him, hid in the vehicle during the transaction with the intent to surprise the undercover officer, and demonstrated a clear willingness to use force to obtain the full $2,100. We cannot say that Griffin's sentence is inappropriate in light of the nature of the offenses given his express willingness to use force to obtain the money.

[20] Griffin further asserts that his sentence is inappropriate in light of his character. He contends that he is blind, has a severe limp, and suffers from post-traumatic stress disorder. He further contends that he "led a law-abiding life for a significant period of time [thirteen years] prior to these offenses[.]" Appellant's Br. at 19. But, as the State points out, Griffin's criminal history is significant. Prior to the present offense, Griffin had been convicted of crimes in two different states. Those prior convictions include a conviction in Illinois in 1998 for felony possession of a firearm, a conviction in Missouri in 2004 for felony possession of a controlled substance, a conviction in Missouri in 2004 for

obstructing an officer, and a conviction in Missouri in 2008 for resisting an officer. And his current offense, along with two of his prior felony convictions, involve drugs and weapons. In sum, Griffin's criminal history reflects his poor character. *See Stephenson*, 29 N.E.3d at 122. We hold that Griffin's sentence is not inappropriate. Accordingly, we affirm his sentence.

Affirmed.

Mathias, J., and Barnes, J., concur.